65 So.2d 765 (1953)
HAAS et ux.
v.
CRISP REALTY CO. et al.
Supreme Court of Florida, Special Division B.
June 5, 1953.
Askew & Earle, St. Petersburg, for appellants.
Mann, Harrison & Stone, St. Petersburg, for appellees.
PATTERSON, Associate Justice.
A proper consideration of the issues presented in the cause below and on appeal here requires a rather detailed statement of the transactions between the parties, and their pleadings in this litigation.
Crisp Realty Co. is a real estate broker and Northeast Homes, Inc., is owner and developer of a subdivision in Pinellas County. Crisp Realty Co., through its agent in Philadelphia, interested appellants in purchasing certain lots, then unimproved, in such subdivision. After considerable negotiation between appellants and Crisp Realty Co. it was determined that appellants would purchase a home to be built on two lots in such subdivision by Northeast Homes, Inc., according to plans and specifications agreed upon by appellants and filed with FHA for the purpose of a mortgage commitment, it being understood that part of the purchase price would have to be financed and appellants desired FHA terms. During much of the time these negotiations were progressing, the appellants were at their farm in Pennsylvania and Crisp Realty Co. was handling the matter of mortgage *766 commitment with FHA. Crisp was successful in obtaining a "qualified owner-occupant" commitment of $9,800 on the agreed specifications. Meanwhile appellants had sold their farm in Pennsylvania realizing net proceeds of some $9,500. The total consideration for the Northeast purchase was agreed upon as $15,550 and contract was prepared by Crisp Realty Co. on the commonly used "deposit receipt" form, forwarded to Pennsylvania and executed there by appellants. The terms of the contract provided for the total purchase price of $15,550 with "payment to be made as follows: $6,050.00 acknowledged above, and qualify for an execute an FHA mortgage in the principal sum of $9,800.00." The cash sum of $6,050 included $300 as advance payment on financing charges in connection with the mortgage, which charges purchasers agreed to pay.
Simultaneously with the execution of the contract, purchasers delivered their check for $6,050 with notation thereon "In full payment per phone 2/3/50 with Mr. Crisp message."
At about the time the dwelling was completed by Northeast, appellants came to St. Petersburg, presented themselves to the office of Crisp Realty Co. for the purpose of closing the purchase, and gave to Crisp certain credit and financial information to be included in their application to FHA for the purpose of qualifying for the commitment already procured by Crisp. On the following day Crisp presented to appellants the prepared application for their required execution under oath, which appellants refused to sign on the contention that the data contained was padded and false and materially at variance with the information they had supplied. From that point on, the relations between the parties deteriorated to the extent that this litigation resulted.
Appellants filed their bill for cancellation and rescission of the contract of purchase and for a return of the $6,050 paid on the contract, alleging as grounds for relief that the contract was procured by fraudulent representations to them by Crisp, president of Crisp Realty Co., that he had already secured for them the $9,800 mortgage for a term of 25 years and that there remained only their execution of such a mortgage, which they were willing and ready to do. By amendment appellants alleged the further ground that the contract was intended, and by its terms provided, that the securing by Crisp for the appellants of a 25-year FHA mortgage was a condition of their contract to purchase which Crisp had failed to perform. The amended bill further charged that their failure to consummate the purchase was due to Crisp's failure to procure such a mortgage, and to the further fact that in any event they could not qualify, by reason of the circumstances of their income and assets, for an FHA mortgage as provided by the contract.
Appellees' answer denied the allegations of the grounds charged in the bill, and by way of counterclaim alleged Northeast Homes' performance of the contract and appellants' breach by refusal to execute the necessary papers to consummate the purchase, and claimed forfeiture of the $6,050 partial payment. Answering the counterclaims appellants reasserted as defensive matter the grounds set out in their bill, which we must consider to include the additional grounds of the amendment to the bill, and incorporated their motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted and failure to state any fact or ground on which equity would enforce a forfeiture of the cash payment involved. No separate order was entered on the motion to dismiss the counterclaim.
Evidence was taken before the Chancellor on the issues presented by the pleadings. At the close of the plaintiffs' evidence the Chancellor entertained defendants' motion to dismiss, and being of the view that the evidence was insufficient to sustain the bill or defeat the counterclaim, concluded that further evidence by defendants was unnecessary, made his findings and entered final decree adverse to plaintiffs. The Chancellor's view of the issues and his findings thereon are set out in his "Findings" as follows:
"The matter is presently before the Court on a motion to dismiss at the conclusion of Plaintiffs' testimony, they have rested as to whether or not there is sufficient ground for *767 rescission, either upon the ground of fraud or misrepresentation and upon the grounds of condition preceding. The only difficulty there is that there is a counterclaim in this case for a retention of the sum deposited as liquidated damages. The only other material issue in the counterclaim as I see it was whether or not the commitment was issued or whether or not the Crisp Realty Co. did everything within its power to consummate the deal, that is completed its part of the transaction.
"I believe the lady's testimony alone showed that the title commitment had been tendered to her or that she had seen a commitment for a title insurance policy. The court is going to deny the motion to dismiss solely upon the ground that the court of equity, once having taken jurisdiction wants to end the entire matter and the controversy of the counterclaim.
"The plaintiffs having rested and there being no further defense on the counterclaim, I find and make the following findings that there has been no fraud or misrepresentation on the part of Crisp Realty Company or on the part of Northeast Homes.
"As to the question of interpretation, if one is necessary on the terms, qualify for and execute an FHA mortgage in the principal sum of $9,800.00 as contended by the plaintiffs as being a condition precedent, the court construes that and as a matter of fact, I see no particular reason to construe them, I think the words are clear in their import  it means in effect, that the burden and duty is upon the purchasers to qualify for and execute the mortgage.
"The seller in this instance has done everything it could in my opinion, and the reason for the fault, if anything, was upon the plaintiffs themselves.
"You may take a decree for the defendants in the matter with direction that the $6,050.00 be retained as liquidated damages, costs to be paid by the plaintiffs."
Final decree was thereupon entered dismissing the bill and providing, as to the counterclaim: "Crisp Realty Company is directed to pay over to Northeast Homes, Inc. the sum of Six Thousand and Fifty Dollars ($6,050.00), heretofore placed in special escrow account with The Union Trust Company under direction of this Court, to be retained by Northeast Homes, Inc. as its liquidated damages." The decree also directed dismissal of Northeast Homes' law action for damages against appellants for breach of contract which had been stayed during these proceedings.
We note here that the contract of purchase carried the usual liquidated damages provisions as follows, "5. That in case of the failure of the purchaser to make either of the payments, or any part thereof, or to perform any of the covenants on his part made or entered into, this contract shall, at the option of the seller, be terminated and the purchaser shall forfeit said earnest money or deposit; and the same shall be retained by the seller as liquidated damages, and the escrow agent is hereby authorized to pay over to the seller the earnest money or deposit."
In their appeal from the final decree appellants have assigned nine assignments of error, the first eight of which challenge the Chancellor's view of the evidence before him, and his construction of the terms of the contract. We have reviewed the evidence and find substantial support for the Chancellors' findings thereon. Likewise, we find no error in the Chancellors' construction of the contract. Being unable to disturb the Chancellors' findings under such circumstances, all assignments of error are disposed of except the ninth as follows:
"9. The Court erred in holding that the sum of Six Thousand and Fifty Dollars ($6,050.00) paid by plaintiffs to the defendant, Crisp Realty Company, constituted liquidated damages and did not constitute a penalty or forfeiture, for the reason that said holding is contrary to the law and principles of equity."
Our view of the counterclaim and our understanding of appellees' brief and argument are that the counterclaim rests on the rule of law that a purchaser in default on a contract to purchase real property may not recover from the seller payments made *768 in partial performance of his contract. Further, we cannot escape the conclusion that the Chancellor decreed the retention of the cash down payment in this case on the theory of liquidated damages. He has expressly said so both in his findings and in his decree. We are therefore first required to decide whether the retention of the down payment in this case can be sustained as a valid and agreed liquidation of damages.
This court has so often expressed the considerations governing the validity of contract provisions for liquidation of damages that it would be superfluous to recount them here. We think the holding and citations in Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538, 6 A.L.R.2d 1395, impel the conclusion that under the circumstances of this case the deposit-down payment must be construed as a penalty rather than a valid liquidation of damages. Among other things, we note the relative size of the deposit and the fact that its amount was fixed not by any contemplation by the parties of "just compensation" for a breach, but by the maximum amount of a mortgage commitment under FHA rules and regulations. It is urged upon us that inasmuch as the contract involves the construction of a dwelling rather than the sale of one already completed, probable damages for default are great and uncertain. We are not persuaded, however, that actual damages accruing to the builder are not susceptible of measurement and proof for purposes of recovery.
We think it was error to decree the retention of the cash payment in this case as liquidated damages without a showing of actual damage. However, we would not be disposed to disturb the final decree if its result were justified on any other ground appearing in the record. We must therefore consider the rule heretofore alluded to, that a purchaser in default is not entitled to recover from his vendor money paid in part performance of an executory contract. Such is the established rule in practically all American jurisdictions and has been specifically adopted in this state in Beatty v. Flannery, Fla., 49 So.2d 81, 82, heavily relied on by the appellees. Our examination of the record in respect of such rule is made in the light of the Chancellor's findings of fact, which we have approved, to the effect that the seller has fully performed its part of the contract and that purchaser is in default for failure to consummate the transaction. We take note however of the Chancellor's language, "The seller in this instance has done everything that it could in my opinion and the reason for the fault, if anything, was upon the plaintiffs themselves." (Emphasis supplied.)
In viewing the rule announced in Beatty v. Flannery, supra, we notice that that case was a law action for recovery by a purchaser of a ten per cent deposit made in a purchase contract carrying forfeiture and liquidated damage provisions similar to those in the contract in this case. In denying recovery of the deposit in that case, this court founded its decision on the rule urged upon us here by appellees, rather than the liquidated damage clause of the contract. However, in doing so, the court went on to say: "We recognize that there are exceptions to the general rule that a vendee in default cannot recover, but we find no such circumstances in this case. There was no intimation of fraud on the part of the vendor, nor that the vendee's failure to fulfill the contract was due to any misfortune beyond his control that gave the vendor a benefit, the retention of which was shocking to the conscience of the court." Can this court say, from the record before us, that the noted exceptions are foreclosed? Appellants have lost the issue of fraud and right to rescind. Nevertheless, it appears that the Chancellor, not having found it necessary to consider the rule at all, appears not to have considered or determined the nature of the purchasers' default, that is to say, whether willful and capricious, or whether resulting from unfortunate inability to perform. If the latter, he might well have considered the forfeiture of a deposit the size of the one here, without a showing of actual damage, to be "shocking to the conscience of the court." We do not think the issues presented by plaintiffs' answer to the counterclaim were so limited as to encompass *769 only the questions involved in the grounds for rescission. The answer, among other things, alleges appellants' inability to qualify for the mortgage required because of the insufficiency of their income and resources, and thereby invokes the aid of equity to avoid forfeiture. We note that there is evidence to support such allegation.
We think, therefore, that complete justice requires us to reverse so much of the final decree as forfeits the cash payment as liquidated damages and to remand this cause with direction to the Chancellor to proceed to hear evidence of the parties on the question whether the unjust enrichment exception to the rule of Beatty v. Flannery, supra, be applied in this case, and to dispose of the controversy accordingly.
This cause is therefore reversed for further proceedings consistent with this opinion.
Reversed in part and affirmed in part.
ROBERTS, C.J., and THOMAS and SEBRING, JJ., concur.