112 So.2d 280 (1959)
Mary Elizabeth O'NEILL, Appellant,
v.
BROADVIEW, INC., a Florida corporation, Appellee.
No. 467.
District Court of Appeal of Florida. Second District.
May 22, 1959.
Ted P. Galatis, Fort Lauderdale, for appellant.
Linwood Cabot of Cabot & Cabot, Fort Lauderdale, for appellee.
SHANNON, Judge.
Appellant, plaintiff below, has appealed from a decree denying her suit to cancel a contract between herself and the appellee, defendant below.
In her complaint plaintiff alleged the execution of a sales contract with defendant. The contract provided for the purchase by the plaintiff of a certain parcel of land and a house, known as model Saratoga K, which the defendant was to build thereon in accordance with the plans and specifications on file in its office. The purchase price was to be $10,440.00, $1,500.00 of which the plaintiff had paid to the defendant, and it was agreed that in the event the plaintiff failed to consummate the transaction within the time allotted, all moneys paid by her were to be forfeited *281 to the defendant as liquidated damages. Plaintiff further alleged that she and the defendant had decided upon the house known as Saratoga K, a model of which she had inspected on the premises of the defendant. As she faced the constructed model of the Saratoga K, the carporate was on her right, and the house was built in conformity to this; whereas, in the home that was built for her the carporate was on the viewer's left, and the house was built in accordance with that. It appears from the record that the model home faced north, while the house constructed for the plaintiff was on a corner lot selected by her and faced approximately southeast. It also appears from the record that the defendant had constructed the house for plaintiff, as well as some 900 other houses in the subdivision, so that it received the maximum benefit from the prevailing breezes, all in accordance with its plans for the development of the subdivision. In other words, the house that was constructed for plaintiff was exactly like the model home she had inspected, except that, being on the opposite side of the street, the floor plan was in contra-position to the floor plan in the model.
After taking testimony, the chancellor found that the plaintiff was in default and had breached the sales contract, that the equities were with the defendant, and the plaintiff was not entitled to recover the $1,500.00 in accordance with the terms of the contract.
The plaintiff sets out four points on this appeal, (1) that the plaintiff and defendant, either or both, labored under a mistake of fact at the time of the execution of the contract, (2) that the evidence shows that the plaintiff did not breach the contract, (3) that the defendant did breach the contract, and (4) whether or not the sum of money paid by plaintiff under the terms of the contract should be retained by the defendant as liquidated damages.
The contract called for a house known as the Saratoga K in accordance with the plans and specifications on file in the office of Broadview, Inc. It was conceded by the plaintiff that the house that was actually built was the Saratoga K model. The plaintiff takes the position that by reason of the house being reversed in plan, as she had understood it, that there was a mistake of fact. She urges that it was either a unilateral error or a mutual mistake. Nothing was said by either party at the time of the execution of the contract about the plans, nor was it discussed that the house was to be built exactly the same as the model house except that the rooms in it were to be transposed.
The mistake which plaintiff alleges is plainly unilateral, as only she was mistaken concerning the configuration of defendant's Saratoga K plans. In 12 Am.Jur., Contracts, § 133, in regard to unilateral mistake of fact, it is said:
"It has been declared that if, in the expression of the intention of one of the parties to an alleged contract, there is error, and that error is unknown to, and unsuspected by, the other party, that which was so expressed by the one party and agreed to by the other is a valid and binding contract, which the party not in error may enforce. In other words, a party to a contract cannot avoid it on the ground that he made a mistake where there has been no misrepresentation, there is no ambiguity in the terms of the contract, and the other contractor has no notice of such mistake and acts in perfect good faith. A unilateral error, it has been said, does not avoid a contract. * * *."
In 12 Am.Jur., Contracts, § 138, it is stated:
"The parties are bound by the meaning of a writing made by them as properly interpreted, even though one of them is ignorant and mistaken as to the contents thereof. Moreover, a unilateral mistake is ordinarily not ground for reformation. * * *."
The defendant contends that in order to prove a unilateral or a mutual mistake *282 of fact, the plaintiff must demonstrate first, that there was a mistake of fact in existence at the time of the execution of the contract in question, there being no element of misrepresentation or fraud, and second, that this mistake of fact was known or communicated to the defendant. The evidence is devoid of any facts which would tend to show that plaintiff had communicated her intention to defendant, and the plain wording of the contract must govern.
The plaintiff has failed to prove that her agreement as contained in the contract was ambiguous. The contract, in fact, shows otherwise. Even if she had in her mind the intention she alleged in her complaint, it was not communicated to the defendant, who had no knowledge of it. No element of fraud having been charged or proven, it follows that she is not entitled to a recission of the contract.
With regard to the liquidated damages provision of the contract, there have been many cases decided in Florida. Perhaps the leading case, insofar as this question is concerned, is the case of Beatty v. Flannery, Fla. 1950, 49 So.2d 81, 82, wherein the plaintiff vendee sought to recover $3,000.00 from the defendant, the total purchase price being $30,000.00, and the contract containing the usual provision for retention of the deposit by the seller in the event of the default by the vendee. In that case our Supreme Court said:
"The Pembroke v. Caudill case, supra (160 Fla. 948, 37 So.2d 538, 542, 6 A.L.R.2d 1395), relied on by appellants, was not concerned with an attempt by a vendee in default to recover a part payment, but on the contrary involved a suit by the vendor to recover from the vendee an amount stipulated therein to be liquidated damages in the event of default by the vendee. This court expressly stated that `We have made no attempt to settle certain questions which may arise under a stipulation similar to the one we have considered, in a case where a deposit of money has actually been made by the prospective purchaser for the benefit of the owner. * * * we express no opinion on the point, because we have no such issue before us.' As the record in the instant case stands, we do not consider the Pembroke case to be controlling."
The plaintiff cites Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538; Paradis v. Second Ave. Used Car Co., Fla. 1952, 61 So.2d 919; Haas v. Crisp Realty Co., Fla. 1953, 65 So.2d 765, as well as Lewis v. Belknap, Fla. 1957, 96 So.2d 212.
In Haas v. Crisp Realty Co., supra, the Supreme Court said [65 So.2d 768]:
"We think it was error to decree the retention of the cash payment in this case as liquidated damages without a showing of actual damage. However, we would not be disposed to disturb the final decree if its result were justified on any other ground appearing in the record. We must therefore consider the rule heretofore alluded to, that a purchaser in default is not entitled to recover from his vendor money paid in part performance of an executory contract. Such is the established rule in practically all American jurisdictions and has been specifically adopted in this state in Beatty v. Flannery, Fla., 49 So.2d 81, 82, heavily relied on by the appellees. Our examination of the record in respect of such rule is made in the light of the Chancellor's findings of fact, which we have approved, to the effect that the seller has fully performed its part of the contract and that purchaser is in default for failure to consummate the transaction. We take note however of the Chancellor's language, `The seller in this instance has done everything that it could in my opinion and the reason for the default, if anything, was upon the plaintiffs themselves.' (Emphasis supplied.)"
The amount provided by the contract as liquidated damages is not sufficient to shock *283 the conscience of the chancellor, and hence we hold that this aspect of the case is controlled by Beatty v. Flannery, supra.
Affirmed.
KANNER, C.J., and ALLEN, J., concur.