259 So.2d 129 (1972)
H.D. HUTCHISON and Elizabeth L. Hutchison, His Wife, Petitioners,
v.
C.E. TOMPKINS and Douglas Mac Tompkins, Respondents.
No. 40482.
Supreme Court of Florida.
February 23, 1972.
Rehearing Denied April 5, 1972.
David C. Holloman, Arcadia, and Irving Nathanson, Cocoa, for petitioners.
Robert Dyer, of Van Den Berg, Gay, Burke & Dyer, Orlando, for respondents.
McCAIN, Justice.
On this petition for writ of certiorari we are concerned with the sufficiency of petitioners' first amended complaint to state a cause of action. The trial court determined that the complaint was deficient and dismissed the cause. The District Court of Appeal, Fourth District, in an opinion rendered on September 14, 1970, and reported at 240 So.2d 180, agreed with the trial judge and affirmed the dismissal. We disagree and reverse.
We have taken jurisdiction in the cause in order to resolve a conflict between the District Court's opinion and our previous decision in Hyman v. Cohen, 73 So.2d 393 (Fla. 1954). See Article V, Section 4(2), Florida Constitution, F.S.A.
Count I of the complaint in question alleged that petitioners, as vendors, entered into a contract for the sale of land with respondents, as purchasers. The contract, which was attached to the complaint, revealed *130 that the agreed purchase price was to be $125,000, of which $10,000 in cash was deposited with an escrow agent prior to the date set for closing.
Vendors alleged that although they had at all times done and performed all the stipulations, conditions, and agreements required of them, and were at all times ready, willing and able to consummate the transaction, purchasers without cause had failed and refused to complete the purchase of the subject property as contemplated by the contract.
The contract contained a liquidated damages clause which provided that if the buyer failed to perform, the vendor could at his option elect to retain the $10,000 cash deposit held by the escrow agent. However, it also appears from the complaint that the escrow agent for unstated reasons returned the $10,000 deposit to respondent purchasers upon their request, and without authorization by vendors. Accordingly, by Count I of their complaint petitioners exercised their election to retain the $10,000 and sought damages in that amount from respondents. By Count II damages were sought against the escrow agent.[1]
On the above allegations, the trial court dismissed Count I of petitioner's complaint for failure to state a cause of action, on authority of Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538 (1948). Leave to amend was granted but petitioners elected to stand on their original allegations.
The District Court affirmed, also on authority of Pembroke v. Caudill, supra, but elaborated considerably on the application of that case to the situation, in an ably written opinion by Owen, Judge.
In essence, it was the position of the District Court, (and presumably also the trial court), that the liquidated damages provision of the contract constituted a penalty as a matter of law. The Court said: (1) there were no allegations in the amended complaint nor any provisions in the contract of sale by which it could be shown that any damages which might reasonably have been expected to flow from a breach of the contract were rendered uncertain, conjectural or speculative; (2) loss of profits and/or a possible brokerage commission were both definitely ascertainable in accord with settled legal principles; (3) there being no uncertainty or difficulty of proof as to the vendors' actual damages, there was no need for, or purpose to be served by the stipulation of a sum as liquidated damages; (4) accordingly, the stipulation must have been a penalty or forfeiture under the guidelines set forth in Pembroke v. Caudill, supra.
The District Court concluded by saying that the vendors had the right to sue for actual damages, but since they chose instead to stand on the liquidated damages provision of the contract the dismissal was proper.
We can find no fault with the District Court's analysis of Pembroke, supra, either in its general principles or in its application to the instant case. The instant case is, in fact, "on all fours" with Pembroke. However, both Pembroke and the case sub judice adhere to a rule which, in our judgment, conflicts with the rationale of this Court in the later case of Hyman v. Cohen, supra.
Both the Pembroke and Hyman opinions agree that if damages are "readily ascertainable" a liquidated damages provision in a contract is in essence a penalty and must be struck down. It is in the definition of "readily ascertainable" by the respective courts that the conflict arises. In Pembroke, the Court concluded that the damages were readily ascertainable and that the contract provision was a penalty, stating:
"There was nothing in the transaction which could have rendered the damages *131 which might reasonably have been expected to flow from a breach of the contract uncertain, conjectural or speculative. The only real damages which could have been sustained by the sellers as the result of the purchasers failing to go through with the contract were the profits to be realized from the sale. As to these, they were definitely ascertainable in accordance with settled legal principles for the admeasurement of damages; the measure of the sellers' damage ordinarily being in such cases the difference between the agreed purchase price and the actual value of the property at the time of the breach of the contract of purchase, less the amount paid...."
Hyman involved a lease agreement between plaintiff-lessee and defendant-lessors in which lessee made a $25,000 cash deposit intended, among other things, to guarantee the performance of all the covenants of the lease, including the covenant to pay rent. The lease provided for forfeiture of the deposit in the following terms: "If the lease is cancelled for default of the lessee, then no part of the funds shall be returned to the lessee by the lessors, nor shall the lessors be required to account to the lessee for any part of the said fund."
After performing satisfactorily under the lease for several years, the lessee failed to pay two rental installments in the amounts of $5,000 each. Thereupon, the lessors advised the lessee either to make the required payments or to surrender the premises. Lessee agreed to surrender the leasehold, but demanded the return of his $25,000. Lessors refused to comply, and accordingly lessee brought suit for cancellation of the lease and return of the deposit. In concluding that the sum stipulated was liquidated damages rather than a penalty, the Court said:
"First, were the damages consequent upon a premature termination of the lease by the lessor readily ascertainable? And it should be noted that this question is to be determined by a consideration of the status of the parties at the time the contract was entered into, and not at the time of the breach....
......
"We know of no situation where the damages upon premature termination of a lease are less `readily ascertainable' than in the lease market in the Dade County area. Rentals on hotels and apartment houses in that area fluctuate not only from month to month and week to week, but even from day to day. It is impossible to say at the time of entering into a five-year lease agreement (which was the term of the instant lease) what the lease market will be at any given period during the life of the lease. If the lessee repudiates the lease, or the lessor is compelled to terminate it because of the default of the lessee, the lessor may be able to find a new tenant at a higher rental; or he may be forced to make a new lease at a much smaller rental. But we believe there is no way in which the parties can estimate, with reasonable certainty, what the lessor's damages will be in such case.
......
"In determining the parties' intention, we consider the circumstances as of the time the agreement was entered into; in determining whether equity should relieve against the forfeiture, we consider the circumstances as of the time of the happening of the event as a result of which the forfeiture is incurred. And there is nothing in the record here to show that it would be unconscionable to allow the forfeiture here provided for to stand."
Thus, the rationale of Pembroke may be stated as follows: if damages are readily ascertainable at the time of breach, then a liquidated damage clause will be construed as a penalty, even though the damages were not susceptible of ascertainment at the time the contract was entered into. Conversely, in Hyman the Court concluded that it was necessary for the damages to be readily ascertainable at the time of the drawing of the contract in order for a liquidated damage clause to constitute a penalty.
*132 We are convinced that the Hyman rationale provides the sounder approach to the problem of ascertainability of damages. Damages, especially in real estate transactions, are nearly always ascertainable at the time a contract is breached, because, as the Pembroke opinion points out, the measure of damages involves determining the difference between the agreed purchase price and the market value of the land as of the date of breach. Accordingly, the rule in Pembroke must have, when followed in letter and spirit, (as it was by the District Court in this case) a chilling effect on contract negotiations where the parties wish to include a provision for liquidated damages.
For centuries the concept of liquidated damages has been a part of our law. We have no wish to emasculate it now by following a rule which renders nearly all deposit receipt contracts invalid. The better result, in our judgment, as Hyman contemplates, is to allow the liquidated damage clause to stand if the damages are not readily ascertainable at the time the contract is drawn, but to permit equity to relieve against the forfeiture if it appears unconscionable in light of the circumstances existing at the time of breach. For instance, assume a situation in which damages were not readily ascertainable at the time the contract was drawn, and the parties agreed to a liquidated damage provision of $100,000. Purchaser later repudiated the contract; vendor resold the land to another party, which because of fluctations in the real estate market, resulted in a loss to himself of only $2,000. In such a case a court following the Hyman theory would allow the liquidated damage clause to stand, because damages were not readily ascertainable at the time of drawing the contract, but would, as a court of equity, relieve against the forfeiture as unconscionable. Under the Pembroke theory the liquidated damage clause would be struck down on its face without any consideration of vendor's actual damages.
The instant case falls squarely within Hyman. A contract for the sale of land generally suffers from the same uncertainty as to possible future damages as a lease agreement. The land sale market in Florida fluctuates from year to year and season to season, and it is generally impossible to say at the time a contract for sale is drawn what vendor's loss (if any) will be should the contract be breached by purchaser's failure to close. Accordingly, in the instant case we conclude that the damages which the parties could expect as a result of a breach were not readily ascertainable as of the time the contract was drawn up; therefore, under Hyman, the trial and District Courts erred in construing the liquidated damage provision as a penalty and dismissing the complaint. Moreover, because the definition of "readily ascertainable" in Pembroke v. Caudill, supra, is incompatible with the rationale of Hyman, we hereby recede from Pembroke to the extent of such conflict.
Finally, we disagree that a finding that the liquidated damage provision constituted a penalty would have required that the complaint be dismissed for failure to state a cause of action. It is well established in Florida that where the allegations of a complaint show the invasion of a legal right, the plaintiff on the basis thereof may recover at least nominal damages, and a motion to dismiss should be overruled. Williams v. Atlantic Coast Line R. Co., 56 Fla. 735, 48 So. 209, 24 L.R.A.,N.S., 134 (1909) and Augustine v. Southern Bell Telephone & Telegraph Co., 91 So.2d 320 (Fla. 1956). In our opinion this principle is applicable to the instant case since the complaint alleged a contract creating a legal right in the petitioners to receive the contract price in exchange for the land, and an invasion of that right when the respondent failed to perform.
We note, additionally, that petitioners' failure to allege specific damages does not foreclose them from attempting to prove general damages at trial. General damages, that is, those damages which naturally and necessarily flow or result from the injuries alleged need not be specifically *133 pleaded. Rule 1.110(b) (3), RCP, 30 F.S.A.[2] See also, Warfield v. Hepburn, 62 Fla. 409, 57 So. 618 (1912) and Jacksonville Electric Co. v. Batchis, 54 Fla. 192, 44 So. 933 (1907). Only special damages must be specifically pleaded in order to be considered as an item of recovery. Rule 1.120 (g), RCP. See also, Moses v. Autuono, 56 Fla. 499, 47 So. 925, 20 L.R.A.,N.S., 350 (1908); Mansfield v. Brigham, 91 Fla. 109, 107 So. 336 (1926); and Seltzer v. Grine, 79 So.2d 688 (Fla. 1955).
Therefore, certiorari is granted, the decision of the District Court is quashed and the cause remanded to the District Court with instructions to order the trial court to reinstate petitioners' complaint.
It is so ordered.
ROBERTS, C.J., ADKINS and BOYD, JJ., and MASON, Circuit Judge, concur.
NOTES
[1] The claim against the agent was not dismissed by the trial court and is not an issue in this certiorari proceeding.
[2] "(b) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, crossclaim or third party claim must state a cause of action and shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the ultimate facts showing that the pleader is entitled to relief and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded. Every complaint shall be considered to pray for general relief." (Emphasis supplied.)