387 So.2d 393 (1980)
H.L. McNORTON, Appellant,
v.
PAN AMERICAN BANK OF ORLANDO, N.A., Appellee.
No. 79-633/T4-455.
District Court of Appeal of Florida, Fifth District.
July 23, 1980.
Rehearing Denied September 9, 1980.
*394 David B. King of Peed & King, P.A., Orlando, for appellant.
Frederic B. O'Neal of Johnson, Motsinger, Trismen & Sharp, P.A., Orlando, for appellee.
COBB, Judge.
In this relief from forfeiture case, McNorton, plaintiff below, appeals from the order of the circuit court granting defendant Pan American Bank of Orlando's motion to strike Counts I, II and III of his amended complaint, wherein the court also ruled that the motion to dismiss the amended complaint was moot and from entry of final judgment in favor of the Bank.
In March of 1977, McNorton and the Bank entered into an agreement whereby McNorton was to purchase the mortgage lien interest of the Bank in specified real property. The agreement stated in pertinent part:
2. That H.L. McNorton agrees to purchase and the bank agrees to sell the interest of the bank in the aforementioned mortgage to H.L. McNorton, or nominee, for the sum of ONE HUNDRED THOUSAND and No/100 ($100,000.00) DOLLARS payable as follows:
(a) Fifty Thousand Dollars upon the execution of this agreement; and
(b) Fifty Thousand Dollars due on the 27th day of April, 1977.
.....

*395 8. That the $50,000.00 paid to the bank by McNorton, or nominee, upon the execution of this agreement shall be earned by the bank upon the execution of this agreement. In the event McNorton fails to pay the balance of the funds due to the bank for the execution of this agreement by 5:00 P.M. on the 27th day of April, 1977, then this agreement shall be void and the bank shall be free to negotiate the sale of the mortgage lien to any other party whatsoever. The $50,000, having been earned upon the execution of this agreement, shall be the bank's property completely and shall not be subject to any claim by McNorton, or nominee. (emphasis added).
McNorton did not pay the second $50,000 on time; the deal fell through and McNorton was out $50,000. In May of 1978, McNorton filed a three-count complaint against Pan Am Bank seeking damages in the amount of $50,000. Counts II and III of the complaint were dismissed. Defendant filed an amended motion to dismiss Count I of the complaint on the grounds that the complaint on its face showed that plaintiff had an adequate remedy at law against a third party, National Car Rental Systems, for wrongful garnishment or malicious prosecution; therefore, the court was without jurisdiction to grant equitable relief. The circuit court granted defendant's amended motion to dismiss with leave to file an amended complaint. McNorton filed an amended three-count complaint and in Count I alleged the payment of $50,000 contemporaneous with the agreement which was attached as Exhibit 1. McNorton alleged that on April 27, 1977, he was unable to pay Pan Am Bank the remaining $50,000 because on April 26, 1977 a writ of garnishment was filed against his ComBank/Pinecastle account by National Car Rental Systems causing McNorton to be deprived of the use of some $28,000 which he intended to use towards partial payment of the $50,000 owed April 27, 1977; that he was still deprived of the use of the money due to the garnishment action at the time of filing the complaint, despite a directed verdict in his favor, due to a stay pending appeal; that he did not have the remaining $23,000 necessary to make the full $50,000 payment on Wednesday, April 27, but that he would have had the $23,000 on Friday, April 29, 1977, and had requested an extension; that if he had not been wrongfully deprived of the money in his ComBank account he would have paid the defendant $27,000 on April 27 and been granted the extension. Attached to the complaint as an exhibit was a letter from the Bank's attorney claiming the $50,000 previously paid and terminating all further obligation on the Bank's part by reason of the inability of McNorton to pay the remaining $50,000 pursuant to the agreement. McNorton's complaint further alleged that he negotiated with the Bank, but the negotiations were unsuccessful because he was unable to obtain a rapid dissolution of the writ of garnishment; that in August of 1977 the defendant Bank sold the two mortgages that it would have sold to the plaintiff, pursuant to an agreement attached as Exhibit 4, to National Car Rental Systems for $100,000; that as a result of this sale, the defendant Bank sustained no actual damages as a result of McNorton's inability to consummate the purchase; that the $50,000 deposit paid by the plaintiff to defendant bears no relationship to any damages sustained by the Bank and constitutes an unconscionable penalty and a forfeiture; that he had made a demand for repayment of the $50,000, but that the defendant Bank refused his demand; and that he had no adequate remedy at law to recover the $50,000 deposit. McNorton prayed that the court declare the retention by the Bank of the $50,000 unconscionable and relieve plaintiff of the forfeiture which constituted 50% of the purchase price; that the court enter a judgment rescinding the agreement attached as Exhibit 1; and that the court enter a final judgment in favor of plaintiff for $50,000 plus costs and interest.
The primary issue before us[1] is whether Count I of McNorton's complaint stated a *396 cause of action against the Bank for relief from forfeiture.
McNorton's cause of action is based on the rule announced in Hutchison v. Tompkins, 259 So.2d 129 (Fla. 1972), an action by vendors to recover a cash deposit from defaulting purchasers, where the trial court's dismissal of the complaint was reversed and the provision in a purchase and sale agreement for the vendor to retain a cash deposit was held not to be a penalty.
The Bank offers five reasons why McNorton's complaint did not state a cause of action: first, that the equitable remedy is used to affirm and reinstate one's rights under a contract and not to rescind; second, that since relief from forfeiture is a method of affirming rather than avoiding a contract, to state a cause of action plaintiff must allege that he tendered full performance; third, that the agreement between the parties is, as a matter of law, an option and not a deposit receipt or purchase and sale agreement; fourth, that plaintiff failed to allege that his timely performance was prevented by a misfortune beyond his control; and fifth, that plaintiff failed to allege facts which show no adequate remedy at law.
The Bank argues that Hutchison did not set out a rule for providing for relief from forfeiture in other cases or other situations; that the language on which plaintiff is relying is dicta, and cites for our consideration 2 Pomeroy, Equity Jurisprudence, §§ 448-460(d) (Fifth Ed. 1941). We believe the Hutchison case does set out a rule of law concerning relief from a forfeiture. So does the Fourth District Court of Appeal, which stated that Hutchison:
held that whether a clause in a contract is one for liquidated damages or a penalty depends upon whether or not the damages flowing from a breach are readily ascertainable at the time the contract is executed. If the damages are ascertainable on the date of the contract, the clause is a penalty and unenforceable; if they are not so ascertainable, the clause is [usually] one for liquidated damages and enforceable; however, if subsequent circumstances demonstrate it would be unconscionable to allow the seller to retain the sum in question as liquidated damages, equity may relieve against the forfeiture.
Bruce Builders, Inc. v. Goodwin, 317 So.2d 868, 869 (Fla. 4th DCA 1975). In Hutchison the Supreme Court was clarifying the test for determining when there would be a relief from a forfeiture, as well as how to determine whether liquidated damages were or were not a penalty. In Hutchison, the trial court's dismissal of the vendor's complaint on the grounds that the liquidated damages of approximately eight percent were by law a penalty was reversed since the trial court relied upon the rationale of Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538 (1948), which indicated that if damages are readily ascertainable at the time of breach then a liquidated damage clause may be construed as a penalty. According to Hutchison, the critical time for ascertaining damages for purposes of a liquidated damages clause was held to be at the time of the drawing of the contract. Although not specifically related to the facts before it, we believe the following language was intended for the instruction of the bench and bar:
The better result, in our judgment, as Hyman [v. Cohen, 73 So.2d 393 (Fla.)] contemplates, is to allow the liquidated damage clause to stand if the damages are not readily ascertainable at the time the contract is drawn, but to permit equity to relieve against the forfeiture if it appears unconscionable in light of the circumstances existing at the time of breach. For instance, assume a situation in which damages were not readily ascertainable at the time the contract was drawn, and the parties agreed to a liquidated damage provision of $100,000. Purchaser later repudiated the contract; vendor resold the land to another party, which because of fluctuations in the real estate market, resulted in a loss to himself of only $2,000. In such a case a court *397 following the Hyman theory would allow the liquidated damage clause to stand, because damages were not readily ascertainable at the time of drawing the contract, but would, as a court of equity, relieve against the forfeiture as unconscionable.
Hutchison, 259 So.2d at 132. In Bruce Builders the Fourth District Court of Appeal specifically applied the rule set forth in Hutchison to a situation where purchasers in default sought successfully at the trial court level the recovery of their deposit. The district court first determined that damages were not readily ascertainable at the time the contract was executed and allowed a liquidated damages clause to stand. Second, the court looked to precedent to see what traditionally had shocked a court's conscience before reversing and remanding with directions to award the deposit to the vendor. The court noted that in:

Beatty v. Flannery [49 So.2d 81 (Fla. 1950)], retention of a $3,000 deposit on a $30,000 contract created no pangs. And in O'Neill v. Broadview, Inc., [112 So.2d 280 (Fla. 2d DCA 1959)] forfeiture of a $1500 deposit on a $10,440 contract could be tolerated. However, in Hook v. Bowmar, 320 F.2d 536 (5th Cir.1968), loss of a $30,000 deposit on a $95,000 contract was found unconscionable. In the case at bar, the contract was for $173,800, and the deposit was only slightly more than 4% of that sum. Thus, based upon precedent the amount is not shocking to "the court's conscience."
Bruce Builders, 317 So.2d at 870. See also South Fla. Regional Planning Council v. Board of County Comm'rs. of Palm Beach County, 372 So.2d 1142 (Fla. 4th DCA 1979); Mori v. Bomac Indus., Inc., 358 So.2d 47 (Fla. 4th DCA 1978); Beatty v. Flannery, 49 So.2d 81, 82 (Fla. 1950). Hutchison, Beatty, and Bruce Builders indicate that the concept of relief from forfeiture does not necessarily mean the plaintiff is affirming and attempting to reinstate rights under a contract. See 2 Pomeroy, Equity Jurisprudence, § 451, concerning forfeiture occasioned by accident, fraud, surprise, or ignorance. In addition, we hold that retention of 50% of the purchase price paid as a deposit by a vendee in default is sufficiently shocking to state a cause of action. See Haas v. Crisp Realty Co., 65 So.2d 765 (Fla. 1953). Although Haas was decided under the Pembroke rationale, the decision was based upon the relative size of the deposit, approximately 38% of the purchase price. In Haas, the court remanded to the trial court to determine whether or not the unjust enrichment exception to the rule of Beatty v. Flannery should have been applied and stated:
Nevertheless, it appears that the Chancellor, not having found it necessary to consider the rule at all, appears not to have considered or determined the nature of the purchasers' default, that is to say, whether willful and capricious, or whether resulting from an unfortunate inability to perform. If the latter, he might well have considered the forfeiture of deposit the size of the one here, without a showing of actual damage, to be `shocking to the conscience of the court.'
Haas, 65 So.2d at 768.
Second, the Bank argues that McNorton failed to allege that he had ever tendered full performance and cites 30 C.J.S. Equity § 56(d) (1965); 2 Pomeroy, Equity Jurisprudence, § 436. However, Pomeroy in § 451 suggests that
if the party bound by it has been prevented from an exact fulfillment, so that a forfeiture is incurred, by unavoidable accident, by fraud, by surprise, or by ignorance, not willfull, a court of equity will interpose and relieve him from the forfeiture so caused, upon his making compensation, if necessary, or doing everything else within his power.
McNorton argues that equity does not require appellant to perform a useless act and that the complaint alleged that the bank had already sold the mortgages to a *398 third party. In addition, McNorton argues that under the rule of Hutchison and Bruce Builders, tender of performance is not required. We hold that under the present circumstances an allegation of tender of performance was not required, in order to assert the rule of Hutchison, Bruce Builders, and the unjust enrichment exception to the rule of Beatty v. Flannery. See also, Hook v. Bomar, 320 F.2d 536 (5th Cir.1963).
Next, the Bank argues that as a matter of law the agreement was an option because McNorton was not obligated under the agreement to purchase the mortgage, and that McNorton only lost the purchase price of an option. See 33 Fla.Jur. Vendor & Purchaser, § 15 (1960). The Bank relies upon language in the agreement which states that should McNorton fail to pay the balance of the funds due, then the agreement shall be "void." The Bank cites three cases which it asserts turned upon the use of the word "void": McCall v. Carlson, 63 Nev. 390, 172 P.2d 171 (1946); Petitt v. F.V.H. Collins Co., 112 Mont. 12, 113 P.2d 340 (1941); Compton Land Co. v. Vaughan, 33 Cal. App. 130, 164 P. 610 (Cal.2d DCA 1917). McNorton argues that the agreement does not refer to the term "option" on its face; that the terms of the agreement indicate the $50,000 was part of the purchase price and not the cost of an option; that it is unlikely a party would pay $50,000 for a one-month option to purchase property worth only $100,000; and that it is a question of fact whether this agreement is a purchase and sale agreement or an option which cannot be determined on a motion to dismiss. We hold that the agreement is uncertain enough to render the issue of whether it was an option a question of fact rather than a question of law. McCall and Compton Land Co. are distinguishable; the agreements therein were specifically entitled and understood to be option agreements. The payments for the options were not as disproportionate as in the present case. In Petitt the contract was specifically construed not to be an option due to language such as "the vendee hereby agrees to purchase from the vendor," and "consideration for the sale and purchase." Petitt, 113 P.2d at 343. Similar language of agreeing to purchase and sell is found in the agreement sub judice. Courts have even held contracts styled by the parties as an "option" to be a contract of sale and it has been said that a court will incline to construe an ambiguous contract as one of sale rather than an option where it has been treated by the parties as such. 77 Am.Jur.2d, Vendor & Purchaser § 28 (1975).
Next, the Bank argues that under the unjust enrichment exception as articulated in Beatty v. Flannery, McNorton, to have stated a cause of action, must have alleged that his failure to make payment was due to a misfortune beyond his control. The bank argues that although McNorton may have arguably had a bona fide misfortune concerning the $27,000 wrongfully garnished, he alleged no reason why he did not have the other $23,000 on time. Assuming an allegation of misfortune beyond control is required, McNorton alleged evidentiary facts showing an ultimate fact of misfortune beyond his control. See Orlando Sports Stadium, Inc. v. State ex rel. Powell, 262 So.2d 881, 885 (Fla. 1972). McNorton alleged that he would have received an extension on the $23,000 if he could have paid the $27,000. Thus, the misfortune as to the $27,000 controls. In addition, there is authority for finding that mere failure to raise the $23,000 would have been a misfortune beyond McNorton's control, even if an extension were not available as alleged. In Haas, the plaintiffs', purchasers in default, amended bill charged that their failure to consummate the purchase was due to circumstances of their income and assets which made them unable to qualify for an FHA mortgage as provided by the contract, in addition to the defendant realtor's failure to procure such a mortgage for them. The Fifth Circuit Court of Appeal, applying Florida law in Hook v. Bomar, noted that the failure to perform was due to a lack of income and resources on the part of the purchaser.
Finally, the Bank argues that the face of the amended complaint reveals an *399 adequate remedy at law which precludes equitable jurisdiction; that McNorton had an adequate remedy against National Car Rental for wrongful garnishment and that McNorton would be able to recover the $50,000 in a wrongful garnishment or malicious prosecution action for damages. Florida courts recognize the general rule that where a complaint shows on its face that there exists an adequate remedy at law, there is no jurisdiction in equity. E.g., Greenfield Villages, Inc. v. Thompson, 44 So.2d 679 (Fla. 1950). McNorton argues that another general rule is that the remedy at law must exist against the same person from whom the relief in equity is sought. E.g., Hill v. Hill, 185 Kan. 389, 345 P.2d 1015 (1959); Mitchell v. Houstle, 217 Md. 259, 142 A.2d 556 (1958); Buttinghausen v. Rappeport, 131 N.J. Eq. 252, 24 A.2d 877 (1942); Barr v. Roderick, 11 F.2d 984 (N.D.Cal. 1925); Middleton Bank v. Russ, 3 Conn. 135, 8 Am.Dec. 164 (1819); 30 C.J.S., Equity § 25 (1965). As a matter of first impression, we hold the "same person" rule is sound; therefore, the face of McNorton's complaint does not reveal an adequate remedy at law. Alternately, there was a question as to the existence, as well as the adequacy, of the remedy of wrongful garnishment at the time McNorton's amended complaint was dismissed. One of the elements of an action for malicious prosecution is termination of the prior action in favor of the plaintiff. Duval Jewelry Co. v. Smith, 102 Fla. 717, 136 So. 878 (1931). After judgment in McNorton's favor in the prior case, National Car Rental Systems appealed. Commendators state that the better rule is that the pendency of an appeal precludes maintenance of a suit for malicious prosecution. Annot., 41 A.L.R.2d 863 (1955). The Bank argues for two other views discussed in the annotation: (1) that an appeal has no effect whatsoever on when an action for malicious prosecution may be brought; or (2) that an appeal does not preclude an action for malicious prosecution but only enables the defendant to raise the fact of the appeal as grounds for a stay. We do not decide whether a pending appeal of the prior action precluded a malicious prosecution action at the time McNorton sought equitable relief against the Bank. However, the pending appeal question does bear on the adequacy of the remedy at law question.
The mere existence of a legal remedy does not prevent a suit in equity unless the legal remedy be plain, certain, prompt, speedy, sufficient, full and complete, practical and efficient in attaining the ends of justice.
Citizens & So. Nat. Bank v. Taylor, 191 So.2d 866, 867 (Fla. 1st DCA 1966). The Florida Supreme Court in Ponce v. Demos, 159 Fla. 117, 31 So.2d 58 (1947) discussed the standard for determining adequacy of the remedy at law:
[T]he test of whether law or equity affords the most adequate remedy may be revealed by the answer to the question, which remedy will afford the most expeditious relief to the person wronged... If the remedy at law is not as sensitive to the prompt administration of justice as the remedy at equity, then the latter should be adopted.
Id. 31 So.2d at 59. Thus, even if the same person rule were not sufficient for showing the inadequacy of the remedy at law, the likelihood of a court's granting a stay or refusing to entertain a malicious prosecution action pending the result of the appeal of the garnishment action[2] made the legal remedy inadequate for being least expeditious.
In summary, we hold the trial court erred in granting the motion to strike Count I of McNorton's complaint[3] and entering final judgment in favor of defendant Bank. McNorton did state a cause of action under *400 the rule of Hutchison and Bruce Builders concerning relief from forfeiture and the unjust enrichment exception to Beatty v. Flannery. There was no adequate remedy at law against the Bank or against National Car Rental at the time McNorton sought to commence this equitable proceeding. Accordingly, the order of the circuit court striking Count I of McNorton's amended complaint and the judgment in favor of the Bank are
REVERSED.
ORFINGER and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] If the court did not err in dismissing McNorton's complaint for failure to state a cause of action, then a motion to strike would have been proper. See Mack Roth, Inc. v. Gardiner, 96 Fla. 691, 118 So. 728, 730 (1928).
[2] The garnishment appeal was recently decided in favor of McNorton. National Car Rental Systems, Inc. v. Bruce A. Ryals Enterprises, Inc., et al., 380 So.2d 529 (Fla. 5th DCA 1980).
[3] The trial court's dismissal of Counts II and III were not made points on appeal and, therefore, we do not consider the propriety of the trial court's striking those counts in reaching our decision. See Jim Walter Corp. v. Bracht, 239 So.2d 643 (Fla. 1st DCA 1970).