542 So.2d 371 (1989)
George A. CASAVAN, et al., Appellants/Cross Appellees,
v.
LAND O'LAKES REALTY, INC., OF LEESBURG, et al., Appellees/Cross Appellants.
No. 88-128.
District Court of Appeal of Florida, Fifth District.
March 23, 1989.
Rehearing Denied May 3, 1989.
*372 Jackson O. Brownlee, of Law Offices of Jackson O. Brownlee, P.A., Tavares, for appellants/cross appellees.
Robert L. Appleget, Jr., of Landt, Appleget & Wiechens, Ocala, for appellees/cross appellants.
ORFINGER, Judge.
After a real estate transaction between the Carharts, as sellers, and the Casavans, as buyers, fell through, the broker, Land O' Lakes Realty, Inc., claiming no interest in the fund, filed an interpleader action against both parties for a determination of who was entitled to $10,800 which had been deposited with the broker in connection with the transaction. The parties then crossclaimed against each other for the deposit, damages and specific performance.
The jury awarded the Carharts $4,320.00 for rent damages, specifically finding no actual damages for breach of the contract. *373 Thereafter, the trial judge entered a JNOV for the Casavans as to a $5,800.00 portion of the interpled funds, and awarded the Carharts $9,000.00 for attorney's fees and costs, as the "prevailing party."[1] The Carharts filed a cross-appeal, but have failed to file any cross-appeal briefs. We reverse, in part.
The Casavans entered into a written contract to purchase from the Carharts a house and lot in Leesburg, Florida for $37,000. At the time the contract was executed, they deposited a total of $5,000 as required under the sales contract, which was held in escrow by the broker. Pursuant to the contract, the Casavans were permitted to occupy the property at a rental of $400 per month after the contract was accepted, with the provision that the rent would be applied to the purchase price. The Carharts insisted, however, on a firm July 10 closing date and, if the Casavans remained in possession past July 10, they would be required to sign a rental agreement.
On July 10th no closing took place because the mortgage papers being prepared for the Casavans were not ready. To demonstrate their good faith and continued willingness to close, the Casavans deposited an additional $5,800 with the broker. This sum was the balance the Casavans needed to close, in addition to the mortgage proceeds they contemplated receiving. The Carharts, however, refused to close because the closing date had passed, and insisted that the Casavans execute a written lease agreement or vacate the premises. The Casavans refused to sign a lease agreement, remained in possession of the property and filed a specific performance suit in November which they later dismissed. They vacated the property at the end of February  some 7 1/2 months after the July 10 closing date, paying no rent for that period.
The contract between the parties provided that if buyers should fail to perform, "the deposit(s) paid by the Buyer may be retained by ... the ... Seller as liquidated damages ... and in full settlement of all claims." A liquidated damages clause is enforceable where damages are not readily ascertainable at the time the contract is entered into by the parties. See, e.g., Osceola County v. Bumble Bee Construction, Inc., 479 So.2d 310 (Fla. 5th DCA 1985); McNorton v. Pan American Bank of Orlando, 387 So.2d 393, 396 (Fla. 5th DCA 1980), rev. denied, 392 So.2d 1377 (Fla. 1981), and cases cited therein. The sellers, however, chose to waive that option by seeking actual damages in their cross-claim, instead of a forfeiture of the $5,000 deposit. Mr. Carhart testified at trial that he was not claiming the deposit, but only the rent which he claimed was due.
Separate and apart from any instructions as to the claim for rent, the jury was instructed that if they determined that the Casavans breached the contract, they should award the Carharts such amount as the evidence showed would compensate them for their loss. The jury found that the Casavans had breached the contract, but that the Carharts had suffered no damages as a result. Clearly, the issue of whether the Carharts could retain the initial $5,000 deposit as liquidated damages was never presented, nor was such a finding made by the final judgment.
The jury's verdict pertaining to rent damages in the amount of $4,320 is not supported by the record. Appellee argues that the award can be justified on the theory that the Carharts are entitled to claim double rent pursuant to section 83.06[2] or *374 section 83.58, Florida Statutes (1987). Section 83.06 applies only to "nonresidential tenancies," and requires a demand for double rent. It clearly is not applicable here.
Nor do we think section 83.58 applies to this case. It provides:
If the tenant holds over and continues in possession of the dwelling unit or any part thereof after the expiration of the rental agreement without the permission of the landlord, the landlord may recover possession of the dwelling unit in the manner provided for in s. 83.59 [F.S. 1973]. The landlord may also recover double the amount of rent due on the dwelling unit or any part thereof, for the period during which the tenant refuses to surrender possession. [Emphasis added].
This is not a suit for recovery of possession of property after the expiration of a rental agreement. Possession of the premises was delivered to the Carharts prior to the commencement of this litigation.
The Carharts were entitled to receive the fair rental value of the premises for the time it was occupied by the Casavans, and the record supports no more than $400 per month for a total of eight months, or $3,200. Accordingly, we reduce the rent damage award to $3,200.
The subsequent payment of $5,800 was correctly ordered to be repaid to the Casavans because this was not a part of any required deposit, but had been paid by them to evidence their good faith intention to close when the mortgage papers were completed. Of the remaining funds in escrow, $1,014.28 had been awarded to the interpleading broker as attorney's fees and costs. Thus, of the total of $10,800 only $3,985.72 remained to be distributed, out of which the Carharts are entitled to rent of $3,200, the balance to be paid to the Casavans. The Casavans, not the Carharts, are thus the "prevailing parties," since they are entitled to a greater award out of the interpleaded funds than are the Carharts.
That portion of the final judgment which directs the repayment of $5,800 to the Casavans is affirmed. That portion of the final judgment which awards to the Carharts damages of $4,320 plus attorney's fees of $9,000 and costs is reversed and the case is remanded with directions to modify the judgment so as to award the Carharts only the sum of $3,200 out of the escrowed funds, with any remaining balance to be paid to the Casavans, and for such further proceedings as are consistent herewith.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
COBB, J., concurs.
SHARP, C.J., dissents with opinion.
SHARP, Chief Judge, dissenting.
I respectfully dissent. The result achieved by the majority opinion literally snatches defeat for the Carharts (the sellers) out of the jaws of their rightful victory. It is contrary to the crucial determination by the jury in this case that the Casavans (the buyers) breached the real estate contract by failing to close timely. To now deny the Carharts the full amount of their damages, which they proved in this case, and to deny them their rights to attorney's fees and costs as the "prevailing party" under the real estate contract just "ain't right."
Part of the difficulty in this case is caused by the context in which the jury trial took place. The dispute was staged in the form of an interpleader suit to resolve which party was entitled to $10,800.00 in funds deposited with a real estate broker. The Casavans sought damages and other just and equitable relief.[1] The Carharts *375 sought damages both for breach of the real estate contract, and for loss of use of the property due to the Casavans' wrongful possession of it for seven and one-half months past the closing date, rent-free.[2]
The real estate contract provided that if the Casavans breached the contract, they would forfeit their $5,000.00 deposit made to the broker when the contract to purchase was executed.[3] Such liquidated damage clauses are enforceable.[4]
The jury decided by special verdict form that the Casavans breached the contract. They were not entitled to any relief here. The trial court, however, directed that the Casavans were entitled to regain $5,800.00 of the interpled funds, because the testimony at trial established without dispute, that these monies were paid to the broker by the Casavans on the day the closing was set, in an effort to demonstrate their good faith and to win a time extension of the closing. These funds were not paid pursuant to the real estate contract.
The trial court's judgment makes no specific mention of the $5,000.00 deposit made under the contract which formed the balance of the funds interpled in the court. However, the judgment's only sensible construction is that the Casavans receive $5,800 and the Carharts receive $5,000 of the interpled funds. Clearly, all of the interpled funds must be disposed of by the interpleader judgment. Otherwise, the court or the broker would end up with $5,000 windfall. In any event, paragraph 4 of the judgment does provide that whatever excess funds remain after the Casavans recover their $5,800.00 goes to the Carharts, i.e., $5,000.00.
I agree with the majority opinion that all of the jury's actual damage award to the Carharts cannot be sustained. They were awarded $4,320.00. The evidence in this record supports (at best) only an award of $3,200.00. I would affirm as to that amount.
The Carharts argued they were entitled to claim double rent because of the Casavans' seven and one-half month's retention of possession of the premises, pursuant to section 83.06 or section 83.58, Florida Statutes (1985). However, section 83.06 applies only to "nonresidential tenancies," and the property here was a single-family residence. Also, section 83.06 requires proof of a demand for double rent. It clearly is not applicable. I agree with the majority opinion that section 83.56[5] does not apply *376 to this lawsuit either, because it is not a suit to recover possession of real property after the expiration of a rental agreement. There was no rental agreement here, and the Casavans had surrendered possession of the residence.
Taking the testimony at trial at its best to favor the Carharts, $400.00 was the highest monthly rental figure for which the Carharts could have leased the residence for, were it not for the fact that the Casavans were occupying it without legal right. They occupied the residence for seven and one-half months, rent-free. Thus, $400.00 times eight months should be the Carharts' top dollar award for actual damages, or $3,200.00.
The outcome of this complex stream of facts ought to be a judgment which in effect awards the Carharts $5,000.00 plus $3,200.00, or a total of $8,200.00; and the Casavans $5,800.00. The majority opinion avoids this conclusion by construing the Carharts' request for actual damages as a waiver of their right to liquidated damages under the contract. Neither the pleadings nor the proofs justify such a result.
The Carharts' pleadings sought actual damages and other relief that might be appropriate. This is generally viewed as sufficient to justify an award for all kinds of monetary damages (other than special) which a party proves at trial.[6] In this case both liquidated and actual damages can be justified because both arose out of separate occurrences: breach of the sales contract, and wrongful retention of the premises for seven and one-half months following breach of the contract.
Mr. Carhart's testimony at trial that he suffered no actual damages from the *377 breach of the contract does not, in my view, rise to a waiver of the deposit. He could hardly speak for Mrs. Carhart who was also a party. Further, the function of a liquidated damages provision in a contract is to obviate the necessity to prove actual damages where they may be difficult to ascertain, should a breach occur.[7] It should not operate as a waiver, nor a defense. In this case, all the Carharts had to prove was the breach and the terms of the contract to establish their right to the deposit.
Since the trial court is presently holding interpled funds totalling $10,800.00, the proper result in this case should be to award $8,200 to the Carharts and the balance of $2,600 to the Casavans. Interpleader costs should be apportioned between the parties and the $9,000 attorney's fees award to the Carharts should be affirmed, since they were (or should by all rights be) the prevailing parties in this litigation. Under no circumstances should the Casavans be found to be the "prevailing party" under the real estate contract. The $5,800 fund was found by the trial court not to be paid pursuant to the contract, and thus the contract provision awarding attorney's fees to the "prevailing party" is not applicable. Gibson v. Courtois, 539 So.2d 459, (Fla. 1989).
NOTES
[1] The contract provides that "In connection with any litigation arising out of this Contract, the prevailing party will be entitled to recover reasonable attorney's fees and costs."
[2] Section 83.06, Florida Statutes provides:

83.06 Right to demand double rent upon refusal to deliver possession. 
(1) When any tenant refuses to give up possession of the premises at the end of his lease, the landlord, his agent, attorney or legal representatives, may demand of such tenant double the monthly rent, and may recover the same at the expiration of every month, or in the same proportion for a longer or shorter time by distress, in the manner pointed out hereinafter.
(2) All contracts for rent, verbal or in writing, shall bear interest from the time the rent becomes due, any law, usage or custom to the contrary notwithstanding.
[1] The counter-cross claim states:

2. Pursuant to that Contract [of Sale], Counter Cross-claimants entered into possession of the subject property, expended large sums of money for the repair of said property, as well as many hours of labor in repairing the property and bringing it up to a liveable condition.
It also alleges the Casavans have been damaged by the (a) inability to use the $10,800 on deposit with the broker, (b) expenses of repair in anticipation of closing, (c) for time and effort spent in repair and improvement of the premises, (d) mental anguish, and (e) that to permit the Carharts to benefit from the above constitutes unjust enrichment.
[2] The cross claim states:

3. The Cross-Defendants entered into possession of the subject property on or about April 28, 1986 and continued in possession of the real property until on or about March 1, 1987 without the consent or approval of the crossclaimants.
* * * * * *
6. The crossclaimants have been unjustly deprived of the use and possession of the subject property by the Cross-Defendants' unauthorized possession thereof.
[3] Paragraph S of the contract provides that if the buyer fails to perform the contract within the time specified, the deposit paid by the buyer may be retained by the seller as liquidated damages.
[4] See, e.g., Hyman v. Cohen, 73 So.2d 393, 401 (Fla. 1954); Multitech Corp. v. St. Johns Bluff Investment Corp., 518 So.2d 427, 432 (Fla. 1st DCA 1988); Osceola County v. Bumble Bee Construction, Inc., 479 So.2d 310 (Fla. 5th DCA 1985); Medical Equipment Rental Co. v. Tarr, 467 So.2d 459, 460 (Fla. 4th DCA 1985); Berndt v. Bieberstein, 465 So.2d 1264 (Fla. 2d DCA 1985); McNorton v. Pan American Bank of Orlando, 387 So.2d 393, 396 (Fla. 5th DCA 1980), rev. denied, 392 So.2d 1377 (Fla. 1981), and cases cited therein.
[5] Section 83.56, Florida Statutes (1985) states:

83.56 Remedies; termination of rental agreement.
* * * * * *
(2) If the tenant materially fails to comply with s. 83.52 or material provisions of the rental agreement, other than a failure to pay rent, or reasonable rules or regulations, the landlord may:
(a) If such noncompliance is of a nature that the tenant should not be given an opportunity to cure it or if the noncompliance constitutes a subsequent or continuing noncompliance within 12 months of a written warning by the landlord of a similar violation, deliver a written notice to the tenant specifying the noncompliance and the landlord's intent to terminate the rental agreement by reason thereof. Examples of noncompliance which are of a nature that the tenant should not be given an opportunity to cure include, but are not limited to, destruction, damage, or misuse of the landlord's or other tenants' property by intentional act or a subsequent or continued unreasonable disturbance. In such event, the landlord may terminate the rental agreement, and the tenant shall have 7 days from the date that the notice is delivered to vacate the premises. The notice shall be adequate if it is in substantially the following form:
[form of notice]
(b) If such noncompliance is of a nature that the tenant should be given an opportunity to cure it, deliver a written notice to the tenant specifying the noncompliance, including a notice that, if the noncompliance is not corrected within 7 days from the date the written notice is delivered, the landlord shall terminate the rental agreement by reason thereof. Examples of such noncompliance include, but are not limited to, activities in contravention of the lease or this act such as having or permitting unauthorized pets, guests, or vehicles; parking in an unauthorized manner or permitting such parking, or failing to keep the premises clean and sanitary. The notice shall be adequate if it is in substantially the following form:
[form of notice]
(3) If the tenant fails to pay rent when due and the default continues for 3 days, excluding Saturday, Sunday, and legal holidays, after delivery of written demand by the landlord for payment of the rent or possession of the premises, the landlord may terminate the rental agreement. The 3-day notice shall contain a statement in substantially the following form:
[form of notice]
(4) The delivery of the written notices required by subsections (1), (2), and (3) shall be by mailing or delivery of a true copy thereof or, if the tenant is absent from his last or usual place of residence, by leaving a copy thereof at the residence.
(5) If the landlord accepts rent with actual knowledge of a noncompliance by the tenant or accepts performance by the tenant of any other provision of the rental agreement that is at variance with its provisions, or if the tenant pays rent with actual knowledge of a noncompliance by the landlord or accepts performance by the landlord of any other provision of the rental agreement that is at variance with its provisions, the landlord or tenant waives his right to terminate the rental agreement or to bring a civil action for that noncompliance, but not for any subsequent or continuing non-compliance.
(6) If the rental agreement is terminated, the landlord shall comply with s. 83.49(3) (emphasis added).
[6] The pleadings state:

WHEREFORE, the Crossclaimants request judgment against the Cross-Defendants for damages in excess of FIVE THOUSAND DOLLARS ($5,000.00), for costs and attorney's fees and the entry of an Order directing the Plaintiff to destribute the subject funds to the Crossclaimants, less the Plaintiff's court costs and reasonable attorney's fees, and for such other and further relief as this Court may deem equitable and just.
(Hutchison v. Tompkins, 259 So.2d 129 (Fla. 1972) (general damages which naturally and necessarily flow from the injuries alleged may be proved although not pleaded; only special damages must be specifically pleaded).
[7] See generally Bayshore Royal Co. v. Doran Jason Company of Tampa, Inc., 480 So.2d 651, 652 (Fla. 2d DCA 1985); Secrist v. National Service Industries, Inc., 395 So.2d 1280 (Fla. 2d DCA 1981).