395 So.2d 1280 (1981)
Geraldine SECRIST, Appellant/Cross-Appellee,
v.
NATIONAL SERVICE INDUSTRIES, INC. d/b/a National Linen Service, Appellee/Cross-Appellant.
No. 80-1092.
District Court of Appeal of Florida, Second District.
April 1, 1981.
*1281 David H. Simmons and Hal K. Litchford of Dempsey & Slaughter, Orlando, for appellant/cross-appellee.
Philip O. Allen and Gerald W. Medeiros of DeVane, Munson, Anderson & Allen, Lakeland, for appellee/cross-appellant.
BOARDMAN, Judge.
Defendant Geraldine Secrist appeals and plaintiff National Service Industries, Inc. (NSI) cross-appeals the final judgment rendered by the trial court. We reverse the interest assessment contained in the final judgment, but affirm in all other respects.
NSI filed a complaint against Secrist d/b/a Bishop Court Nursing Home for an outstanding balance due of $4070.48 on a contract between the parties and for liquidated damages for Secrist's subsequent breach (unlawful termination) of the contract. Secrist filed an answer and counterclaim seeking damages of $3737.61, which NSI had agreed to pay Secrist for her inventory, *1282 which NSI had picked up from Secrist at the time services under the contract began.
Following a bench trial, the trial court entered its final judgment. The court awarded NSI $4212.54 plus 10% interest from April 29, 1977, for past services performed by NSI for Secrist. The court found the liquidated damages provisions of the contract to be valid but excessive because they included 30% recovery for overhead after fifteen months of the contract period had been completed; the court found the sum of $2964 for lost profits, together with interest from April 29, 1977, to be reasonable. The court awarded Secrist $1500 on her counterclaim. The court therefore ruled that NSI was to recover from Secrist $5676.54 plus $1702.95 interest and $750 attorney's fees. This appeal and cross-appeal followed timely.
The pertinent facts are that in December, 1975, Secrist and NSI entered into a contract under which NSI was to provide laundry and linen service for Secrist for a three-year period. Secrist continued using the linen service until March, 1977, when she unilaterally terminated the agreement without NSI's consent.
The parties stipulated that $4070.48 was the amount of NSI's last bill to Secrist and that this amount had not been paid. However, Barton Hill, an NSI employee, testified without objection that the amount of the last bill was actually $4212.54.
Paragraph 13 of the written contract between the parties provided for liquidated damages in the event of an unlawful termination of service by the customer of 40% of the gross receipts under the contract for the unexpired term  30% for overhead and 10% for profits. Hill testified that Secrist's account averaged $1411 per month, 40% of which is $564 a month, and that since the contract had twenty months to run at the time of Secrist's breach, the liquidated damages would be $11,291. He and Doug Snider, the assistant manager of the Lakeland plant, testified that this was reasonably proportionate to the expected actual damages that NSI might suffer. Snider testified that the biggest item of overhead with a customer the size of Secrist is the linen that must be purchased to service the account and that the initial cost of providing linen for a nursing home would be $250 per bed. Secrist testified that she had fifty-eight beds in her establishment. Snider testified that Secrist's linen service was daily. Hill testified that one can expect to get twenty-five to twenty-six washings out of a sheet. After termination of the contract, the linen must be stored until it can be used in another account. The fact that it may be reused is accounted for in the liquidated damages clause. Although Hill testified that the liquidated damages amount was reasonable based on the linen purchased, the machinery NSI may have purchased, the overhead, the lights, and the water, he conceded that NSI had not purchased any machinery.
The first issue raised concerns the validity of the liquidated damages provision. A liquidated damages provision is proper only when the provision is reasonable and is not a penalty and when the damages are by their nature uncertain. 17 Fla.Jur.2d Damages § 98 (1980). If the provision calls for an amount in damages that is excessive or unreasonable, and hence a penalty, the provision will not be enforced by the courts. See Poinsettia Dairy Products v. Wessel Co., 123 Fla. 120, 166 So. 306 (1936); Refram v. Porter, 343 So.2d 1343 (Fla.2d DCA 1977). In such a case, the plaintiff may recover only the actual damages which were pled and specifically proven at trial. Poinsettia Dairy Products v. Wessel Co., supra.
Secrist contends that although the final judgment first states that the liquidated damages provision is found not to be a penalty, this language is superseded by the trial court's specific finding that the amount stipulated was excessive, and that NSI was therefore not entitled to any recovery on the breach of contract claim. We disagree.
In the first place, Hutchison v. Tompkins, 259 So.2d 129 (Fla. 1972), held *1283 that where damages are not readily ascertainable when a contract is entered into, the trial court should allow the liquidated damages clause to stand, but through its equity powers relieve against the liquidated sum if it appears unconscionable in light of the circumstances existing at the time of the breach. See Hyman v. Cohen, 73 So.2d 393 (Fla. 1954); Varner v. B.L. Lanier Fruit Co., 370 So.2d 61 (Fla.2d DCA 1979). The trial court ruled that the liquidated damages were excessive at the time of breach because fifteen months of the contract period had been completed and the liquidated damages clause allowed a 30% recovery for overhead. The fact that the liquidated damages may be excessive at the time of breach does not lead to the conclusion that the liquidated damages clause is a penalty and therefore not enforceable. See Hutchison v. Tompkins, supra. There is no evidence to suggest, and it is not contended, that NSI's actual damages in the event of Secrist's breach could be readily ascertained at the time the contract was signed.
Secondly, here the liquidated damages provision consisted of two separate and distinct parts, overhead and profits. The trial court found only the portion allocated to overhead to be excessive. The court therefore acted properly in enforcing the portion of the liquidated damages provision allocated to profits according to its clear terms, rather than requiring NSI to prove its actual damages in the nature of lost profits. The trial court awarded NSI nothing for overhead, the portion of the liquidated damages provision it deemed excessive. Secrist cannot be heard to complain of this result.
NSI does challenge this result on cross-appeal. However, we cannot say that the trial court erred in concluding that a 30% overhead allowance was excessive under the circumstances here. NSI's witnesses admitted that the overhead allowance, presumably included in all its contracts, was computed to cover the purchase of cleaning machinery, yet no such machinery was purchased during the period NSI was providing service to Secrist. Many of the overhead items used to service Secrist, such as water and detergent, would not be purchased or expended if those services were not being performed. NSI seemed to rely primarily on the initial cost of the linens it had to purchase to service Secrist's account. The problem we have, and one that we presume the trial judge could very well have had, is confusion over the useful life of the linen purchased under the use it was receiving and how long any useful linen was likely to be stored between the termination of one contract and its reuse in another account. As to the latter, not even a rough estimate was made. As to the former, the only evidence was that NSI expected to get twenty-five or twenty-six washings out of a sheet. If NSI purchased two sets of sheets per bed and changed beds daily  Secrist's service was on a daily basis  those two sets of sheets would wear out and have to be replaced approximately every two months. This does not sound like an up-front cost that one would have to recover over the life of the contract, but rather more in the nature of a recurring expense item. While this assumption may be incorrect, the record does not show it to be so. On the evidence presented, the trial court could well have found the essentially unsubstantiated testimony of NSI's employees that the overhead allocation was reasonable to be incredible. Since NSI produced absolutely no evidence of actual damages, the trial court did not err in awarding it nothing for overhead. Poinsettia Dairy Products v. Wessel Co., supra.
The second issue appellant raises concerns the amount of interest awarded. Paragraph 8 of the contract provides:
The Customer shall pay to the Company the rental charges provided herein upon each and every delivery of items unless otherwise arranged in writing... . All unpaid rental charges shall bear a service charge at the rate of either one and one half percent (1 1/2%) per month or the maximum allowed by the law, whichever is the lesser, on the unpaid rental charges until paid in full.
*1284 The final judgment specifically awarded 10% interest on the $4,212.54 Secrist owed NSI for services actually furnished. This was the maximum legal interest rate for an individual at the time of the breach and was therefore correct.
However, the dollar amount of interest specified in the final judgment constitutes 10% of the entire damages award, which included the sum awarded for lost profits under the liquidated damages clause. Paragraph 8 of the contract is concerned only with sums due for services that have been provided and is thus not applicable to sums due under the liquidated damages clause. For the interest rate on that portion of the damages award we must look to section 687.01, Florida Statutes (1979), which provides: "In all cases where interest shall accrue without a special contract for the rate thereof, the rate shall be 6 percent per annum, but parties may contract for a lesser or greater rate by contract in writing."
Thus interest should have been assessed at 10% of $2712.54 ($4212.54 less the $1500 awarded to Secrist on her counterclaim) and 6% on the $2964 awarded for lost profits.
In her final point, Secrist contends that the contract in issue was between two corporate parties, NSI and Bishop Court Nursing Home, that Secrist signed the contract solely on behalf of the nursing home, and that she is therefore not liable to NSI in her individual capacity. This argument can be disposed of quickly: it was not raised below and cannot be raised for the first time on appeal. Lipe v. City of Miami, 141 So.2d 738 (Fla. 1962); Nelson v. Pinellas County, 343 So.2d 65 (Fla.2d DCA 1977), rev'd in part on other grounds, 362 So.2d 279 (Fla. 1978).
Accordingly, the assessment of interest contained in the final judgment is vacated and the cause remanded for reevaluation of the interest awarded in accordance with this opinion. In all other respects the judgment is affirmed.
SCHEB, C.J., and DANAHY, J., concur.