413 So.2d 436 (1982)
CHERRY, BEKAERT & HOLLAND, Appellant,
v.
A.L. Patrick LaSALLE, Jr., Appellee.
No. 81-1327.
District Court of Appeal of Florida, Third District.
May 4, 1982.
*437 Murai, Wald & Biondo and Gerald B. Wald, Miami, for appellant.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and James C. Blecke, Miami, for appellee.
Before HENDRY and BASKIN, JJ., and LETTS, GAVIN K., Associate Judge.
BASKIN, Judge.
At the conclusion of a non-jury trial involving the enforceability of LaSalle's covenant not to compete with his former employer, the accounting firm of Cherry, Bekaert & Holland (C, B & H), the court entered judgment in favor of appellee. Finding that the covenant constituted an unreasonable restraint of trade, was predicated upon inadequate consideration and imposed an oppressive penalty, the court refused to enforce or modify the agreement. We agree and affirm.
Although C, B & H had closed its Miami office and moved to Broward County, the covenant not to compete precluded LaSalle from soliciting or performing accounting services for any client or former client of C, B and H for a period of three years after the termination of his employment.[1] If LaSalle *438 served any former client of C, B & H, he would be required to pay a sum equal to two hundred percent of the fees charged those clients by C, B & H during the twelve months prior to his termination.
In addition to the concerns already mentioned, we note that the covenant purports to govern services to clients without regard to when clients may have received services from C, B & H and contains no definition of the area in which it is to apply. See Flammer v. Patton, 245 So.2d 854 (Fla. 1971); Auto Club Affiliates, Inc. v. Donahey, 281 So.2d 239 (Fla. 2d DCA), cert. denied, 285 So.2d 28 (Fla. 1973); § 542.12, Fla. Stat. (1979).[2] For all these reasons, we agree with the trial court's decision.
Affirmed.
LETTS, GAVIN K., Associate Judge, specially concurring:
This particular covenant not to compete doesn't even restrict LaSalle geographically for so much as one block away and he can ply his trade next door to his former employees if he wishes.
The only thing he cannot do is provide services for his former employers' clients for three years. It is true that the 200% of net fees provision is excessive, but so what? He is not supposed to do anything for C, B & H's clients and he certainly does not have to do so.
Nevertheless I concur in the conclusion because I think certain conduct of C, B & H in this case was tantamount to a waiver of the covenant.
NOTES
[1] COVENANT NOT TO COMPETE
In special consideration of his admission as a Special Partner by the Firm, the obligations of the Firm under this agreement and the compensation and other benefits to be received by and which may accrue to him hereunder, the sufficiency whereof is hereby acknowledged, the Special Partner covenants and agrees as follows.
That for a period of three (3) years after the termination of his relationship with the Firm he will not solicit for himself or any other accountant or perform any bookkeeping, auditing, accounting, tax consultant work or accounting services of any other kind, either on his own account or for any other person, firm or corporation in any capacity or relationship, from or for any client or former client of the Firm, without prior consent of the Executive Board, except as a full time employee of any one client. The word "client" shall mean and include any person, firm or corporation for whom any such service or services have been performed by the Firm before, during or after the Special Partner was a member of the Firm and whether or not such person, firm or corporation is no longer being served by the Firm.
The Executive Board may permit the Special Partner to serve clients or former clients of the Firm if it is deemed, in the judgment of the Executive Board, to be in the best interest of the Firm. If the Executive Board shall so decide, the Special Partner shall pay to the Firm an amount equal to two hundred percent (200%) of the net fees earned from said clients by Cherry, Bekaert & Holland for the twelve months prior to their termination with Cherry, Bekaert and Holland or for the twelve months prior to their being served by the Special Partner if they have not completely terminated the services of Cherry, Bekaert & Holland. These payments shall apply to all clients or former clients of Cherry, Bekaert & Holland being served by the said Special Partner within a three (3) year period following the termination of his relationship with the Firm, and such payments shall be due in full, whether said clients become clients of the Special Partner on the first day or the last day of said three (3) year period.
[2] Renumbered as § 542.33, effective October 1, 1980.