480 So.2d 651 (1985)
BAYSHORE ROYAL COMPANY, Appellant,
v.
The DORAN JASON COMPANY OF TAMPA, INC., Appellee.
No. 85-595.
District Court of Appeal of Florida, Second District.
November 15, 1985.
Rehearing Denied January 6, 1986.
Malcolm V. McKay of McKay & Thomas, P.A., Tampa, for appellant.
Robert M. Quinn and R. Andrew Rock of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellee.
LEHAN, Judge.
The defendant, Bayshore Royal Company (Bayshore), appeals a final summary judgment entered in favor of plaintiff, The Doran Jason Company of Tampa, Inc. (Jason), in plaintiff's suit against defendant for real estate brokerage commissions. The obligation of Bayshore to Jason for the commissions arose from a transaction which preceded the execution of the contract between them which is the subject of this suit. That the obligation arose is not in dispute. What is disputed is whether Bayshore was released from the obligation by that contract.
The summary judgment, which we can find no basis to affirm, does not indicate its basis except to track wording of Rule 1.510(c), Florida Rule of Civil Procedure. From argument of counsel and Jason's latest motion for summary judgment it appears that the basis was that a certain so-called liquidated damages clause in paragraph *652 6 of the contract which contained language appearing to release Bayshore from liability for the commissions was found to constitute an unlawful penalty and was, therefore, found to be unenforceable. That clause provided that Bayshore would be released from liability for the commissions if Jason went into default under a separate loan agreement of Jason, partially guaranteed by Bayshore, with a third party, Canadian Commercial Bank (CCB). Paragraph 6, in pertinent part, reads as follows:
In the event of ... any default by ... [Jason] under any instrument delivered by [Jason] to CCB in connection with the Loan [to Jason from CCB] ... [Jason] agree[s] that in addition to any other right or remedy Bayshore may have, ... Bayshore shall be automatically released from any liability for the brokerage commission... .
There is no dispute that Jason did go into default on its loan from CCB.
We reverse. We conclude that the issue relative to that clause involved the adequacy of sufficiency of the consideration for the contract between Bayshore and Jason. More specifically, we conclude that this contractual provision under which Jason conditionally promised to release Bayshore from liability for the commissions constituted consideration provided by Jason for Bayshore's reciprocal promise to Jason to guarantee the CCB loan and did not constitute a liquidated damages clause which could be found to be an unlawful penalty. In summary, our reasoning for reversing is that since (a) penalties of the type apparently found to be unlawful in this case arise out of purported liquidated damages clauses, (b) such clauses, of course, can only exist when they provide for damages, and (c) the clause in question did not provide for damages but represented consideration for the contract, no such penalty could be found to exist.
The following very general and simplified types of definitions of the terms, "consideration," "damages," and "liquidated damages" are borne in mind in this opinion. "Consideration" may be generally thought of as the thing or promise one party to a contract gives to the other party in return for the thing or promise the other party gives. "Damages" in a breach of contract setting like this may be generally thought of as something to be given by one party who breaches the contract to the other party to compensate the other party for his loss which is a consequence of that breach. "Liquidated damages" may be thought of as the same as damages except that the particular amount to compensate the other party for that loss is contractually established in advance.
The wording of paragraph 6 releasing Bayshore from its obligation to pay Jason the commissions (which amounted to approximately $44,000) appears to have been treated by the parties in their arguments as providing, in effect, for a payment by Jason to Bayshore of that amount. Whether any such payment pursuant to paragraph 6 was to constitute liquidated damages, as has been the premise of the arguments of both parties, or was part of the consideration provided by Jason for the contract, as we have concluded it was, could make a great deal of difference in determining whether paragraph 6 is enforceable by Bayshore against Jason, as explained further below. Preliminarily, the difference is that if Jason's promise contained in that clause was consideration, the issue of whether it and other promises of Jason were sufficient to justify enforcing Bayshore's reciprocal consideration (Bayshore's promise to guarantee Jason's loan from CCB  and, more to the point, the issue of whether that reciprocal consideration provided by Bayshore was sufficient to justify enforcing paragraph 6 against Jason  is tested, in general, only by determining whether anything of value was given by (or any detriment was suffered by) the party providing the consideration, however disproportionate in value the consideration provided by the respective parties may have been. On the other hand, if Jason's promise in paragraph 6 constituted liquidated damages to be paid by Jason to *653 Bayshore upon Jason's default to CCB, the enforceability of that clause is tested to a substantial extent by whether its value is or is not excessively out of proportion to actual damages suffered by Bayshore from the default. If, under this liquidated damages approach, the value of paragraph 6 is excessively disproportionate in that regard, that paragraph could be stricken down as an unlawful penalty. This type of testing of the proportionality of the value of Jason's promise in paragraph 6 relative to the amount of any actual damages suffered by Bayshore from Jason's default to CCB is in sharp contrast to the foregoing test to be applied if paragraph 6 is treated as consideration. The basic test for sufficiency of consideration, further described below, has nothing to do with the proportionality of the consideration provided by the respective parties. Also, damages, of course, involve what happens after the breach of a contract, and, in evaluating whether or not a liquidated damages clause is a penalty, a court may consider the equities which exist after the breach. See Hutchison v. Tompkins, 259 So.2d 129 (Fla. 1972). In contrast, in evaluating sufficiency of consideration for a contract a court looks only to the time the contract was entered into.
This distinction between a clause representing damages for breach of a contract and a clause constituting consideration for a contract might be thought of as a "legal technicality." However, which legal test properly applies in this case depends upon first identifying the category of law involved. As is pointed out above, whether the issue in this case belongs in the consideration category of the law or in the damages category is of substantial possible significance. It is sometimes not understood by laymen that so-called legal technicalities often have been created to achieve fairness and consistency in the law. The result reached in the trial court in this case (the apparent refusal to recognize as valid the wording of paragraph 6 releasing Bayshore from its commission obligation to Jason) by evidently using the damages category might be thought of as fair. Paragraph 6 was in consideration for Bayshore's partial guaranty of Jason's loan from CCB, and, as explained further below, Bayshore was ultimately required to pay nothing to CCB on that guaranty. But that result was reached with the perspective of judicial hindsight. In a contract case like this in the consideration category what is fair in the making of a contract should be determined principally by ascertaining what the parties to the contract freely and voluntarily agreed upon. The third part of the remainder of this opinion deals with finally ascertaining whether they actually agreed upon what paragraph 6 by itself seems to reflect.
The remainder of this opinion is organized into three parts: First, an explanation of why paragraph 6 is not a liquidated damages clause because it is not, in fact, a damages clause. Second, an explanation of why paragraph 6 constitutes consideration provided by Jason in its contract with Bayshore, and why Bayshore's reciprocal consideration (its guaranty of the CCB loan) for Jason's promise in paragraph 6 was sufficient notwithstanding arguments which can be made that the contractual promises of Jason were excessively disproportionate to Bayshore's guaranty promise. Third, a description of what we perceive to apparently be the true, unargued issue generated by the arguments made in this case as to what Jason promised to Bayshore and what Bayshore promised to Jason: what is the proper legal construction of clauses in the contract which are described below, including but not limited to paragraph 6, which set forth the consideration provided by Jason to Bayshore and which may be argued to be either conflicting or consistent as to whether under the facts of this case Bayshore was released from the commissions obligation to Jason.
Some portions of the remainder of this opinion, after the discussion about the not always clearly apparent distinction between a contract clause providing for damages and a contract clause providing for consideration, may seem relatively elementary. But those portions, which principally involve the law relative to consideration for *654 contracts, are appropriate to a logical analysis showing no basis to affirm. Those portions serve to explain our conclusion that paragraph 6 constitutes consideration for the making of the contract and not damages to be paid for its breach.
As we have said, the arguments on appeal have as their premise the assumption that paragraph 6 is a liquidated damages clause and have addressed the presumed issue of whether or not such a so-called liquidated damages clause is or is not an unlawful penalty. As we have also said, we have concluded that that is not the issue because that paragraph does not provide for liquidated damages. Nonetheless, we address in this opinion one aspect of those arguments  whether the value of Jason's promise in paragraph 6 was excessively disproportionate to the value of Bayshore's reciprocal promise to guarantee the CCB loan. Our reason for addressing such an argument which we have concluded is misplaced is that the argument could be said to involve what we have concluded is the true issue relating to the consideration provided for the contract. That is, that aspect could be taken to be an argument as to whether or not Bayshore provided sufficient consideration to support the consideration provided by Jason.[1] In any event, the basic thrust of Jason's argument of the facts, in whatever legal context it might be made, seems to be that since Jason's promise in paragraph 6 to release Bayshore from the commissions was in return for Bayshore's guaranty to CCB and since, as matters ultimately turned out, Bayshore did not have to make good on its guaranty to CCB, Jason should not be held to its promise. FIRST, Paragraph 6 Is Not a Liquidated Damages Clause Because It Is Not, In Fact, a Damages Clause.
We conclude that paragraph 6 of that agreement should not have been tested under the law argued by the parties, such as that in Hutchison v. Tompkins, supra, and Nelson v. Hansard, 143 Fla. 898, 197 So. 513 (1940), relative to whether a liquidated damages clause may constitute an unlawful penalty. Generally under that law a liquidated damages clause may be struck down as an unlawful penalty if the amount of actual damages was readily ascertainable at the time the contract was entered into and if the liquidated amount is excessively disproportionate to the actual damages. But we do not construe that clause to be a damages clause at all. Therefore, as we have indicated above, we do not address the arguments of appellant and appellee as to whether the amount of actual damages to which Bayshore was exposed was readily ascertainable and arguments as to whether the amount of damages which Jason was to pay to Bayshore pursuant to paragraph 6 was an unlawful penalty because it was disproportionate to those actual damages.[2]
The provision in paragraph 6 that upon Jason's default to CCB, Bayshore shall be released from any liability for the commissions (which is considered by the parties as in effect providing for a payment by Jason to Bayshore of the amount of the commissions owed) did not provide for damages. See South Florida Regional Planning Council v. Board of County Commissioners of Palm Beach County, 372 So.2d 1142, 1144 (Fla. 4th DCA 1979) (a particular contractual provision which required payment *655 by one party to the other was found to not provide for damages and, therefore, to not be a penalty). In general, as we have said, damages for breach of a contract between parties consists of something to be given by one party to the other as a consequence of that party's breach of a promise in his contract with the other party. See 2 S. Williston, A Treatise on the Law of Contracts § 1338 (3d ed. 1957); 5 S. Williston, supra, at § 770; 5 A. Corbin, Corbin on Contracts § 990, at 3 (1964); 17 Am.Jur.2d Contracts § 521, at 1008 (1964); 22 Am.Jur.2d Damages § 212, at 297 (1965); 17A C.J.S. Contracts § 533, at 1029 (1963); 25 C.J.S. Damages § 111, at 1065 (1966). But Jason's default to CCB was not a breach of a contractual promise by Jason to Bayshore. There was no promise of Jason in the contract with Bayshore for Jason to pay, and not go into default to, CCB. The promise of Jason to pay CCB was made in an agreement between Jason and CCB. Bayshore would have had no cause of action under the terms of its contract with Jason for damages against Jason for the failure of Jason to pay CCB. Nor have we been cited to any authority that liquidated damages, or damages, consist of an amount which a party to a contract (Jason here) is obligated to pay to the other party upon the occurrence of an event when the occurrence of the event is not a breach of that contract by the party so obligated. (Accordingly, we need not address whether or not, and can assume arguendo for present purposes that, a clause like this which does not provide for actual payment of a certain money amount may be considered to be a liquidated damages clause in a case involving damages.[3])
It was orally argued on behalf of Jason that there was an implied obligation of Jason to Bayshore for Jason to pay CCB. No authority was cited for that argument, nor are we aware of any case law which would support a cause of action for damages for a breach of any such obligation.[4] Jason's obligation to pay CCB is legally considered to be separate and independent from the guaranty obligation of Bayshore to CCB in Bayshore's contract with Jason. See 38 Am.Jur.2d Guaranty § 5, at 1000 (1968); 38 C.J.S. Guaranty § 2, at 1132 (1943); L. Simpson, Handbook on the Law of Suretyship 6 n. 5, 11 (1950). There was an additional obligation of Jason under the contract with Bayshore to indemnify Bayshore. But that indemnity obligation would have come into effect only after a default by Jason to CCB and payment to CCB by Bayshore on its guaranty. See 38 Am.Jur.2d Guaranty § 127 (1968); 38 C.J.S. Guaranty § 110, at 1297 (1943).
There is an argument that Bayshore surely had an expectancy that Jason would pay CCB and that from that expectancy an obligation of Jason to Bayshore to do so may be inferred. But we do not conclude under the facts of this case that that would justify rationalizing paragraph 6 into a liquidated damages clause so as to be stricken as a penalty. This seems especially so, as further explained below, where the parties, as a part of the consideration for the contract, apparently agreed upon the consequence of Jason failing to fulfill its obligation to CCB (although finally ascertaining the dispositive nature of that agreement is dealt with in the third part of this *656 opinion) and have further agreed in another provision of the contract that if Jason fails to pay CCB and Bayshore pays CCB, Jason has an obligation to indemnify Bayshore therefor.
The fact that paragraph 6 uses the label "remedy" in connection with the release of Bayshore's liability for the commissions is no more finally determinative (to wit, not at all) than would be the label "liquidated damages" in a contractual provision providing for the payment of money by a party to a contract upon a breach of that party's contractual duty to the other party. The true import of such provisions is to be determined by the actual nature of the provision involved, not what it is labeled. See, e.g., Hyman v. Cohen, 73 So.2d 393, 398 (Fla. 1954). In any event, the full label in paragraph 6 is "right or remedy," and the term "right" is consistent with our construction of that clause as reflecting consideration provided by Jason.
SECOND, Paragraph 6 Constitutes Consideration Provided by Jason in its Contract With Bayshore, and Bayshore's Reciprocal Consideration (Its Guaranty of the CCB Loan) For Jason's Promise in Paragraph 6 Was Sufficient Notwithstanding the Various Arguments to the Effect That the Contractual Promises of Jason Were Excessively Disproportionate to Bayshore's Guaranty.
The promise by Jason to release Bayshore from liability for the commissions was part of Jason's consideration for Bayshore's agreement to guarantee Jason's obligation to CCB. It is not the province of a court to relieve one party of its contractual obligation on the basis of a judicial determination merely as to the adequacy of consideration given for the obligation. In other words, it would not be the province of a court in this case to relieve Jason of an obligation to release Bayshore from liability for the commissions on the basis of whether or not such an obligation of Jason, part of Jason's consideration for Bayshore's guaranty promise, was excessive in relation to that guaranty promise or, on the other hand and perhaps more to the point, whether Bayshore's guaranty promise, which was its consideration for the obligation of Jason, was sufficient to support the enforceability of the obligation.
The court will not ordinarily inquire into the adequacy of the consideration. And the court will not interfere with the facility of contracting and the free exercise of the will and judgment of the parties by not allowing them to be sole judges of the benefits to be derived from their bargains, provided there is no incompetency to contract, and the agreement violates no rule of law. As the law will not stop to scrutinize the amount of benefits conferred upon one party, so neither will it scan the extent of trouble, loss, or obligation the other party has subjected himself to.
.....
Mere inadequacy of consideration is not a sufficient cause for rescinding or canceling a contract unless the inadequacy is so gross as to afford proof of actual fraud or unless the inadequacy is accompanied by other circumstances, such as weakness of mind or the like.
Consideration may consist of either a benefit to the promisor or a detriment to the promisee... . It is, however, sufficient if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do. A contract may be supported by any detriment or inconvenience, however small, sustained by one party, if it is by the express or implied consent of the other party.
11 Fla.Jur.2d Contracts § 63, at 355-57 (1979). These settled, general principles of law are thought to have been established by Lord Coke's "peppercorn theory" of consideration. E. Farnsworth, Contracts § 2.11, at 66 n. 2 (1982), quoting from E. Coke on Littleton 222 (1628) ("and yet if the rent were by one graine of wheat, or one seed of comyn, or one pepper corne ...").
Jason points out that Bayshore did not have to pay CCB because, as is undisputed, *657 after Jason's default Jason renegotiated the loan from CCB which resulted in the release of Bayshore from the guaranty. Therefore, it is argued by Jason that Jason's foregoing obligation in paragraph 6 constituted an unlawful penalty because it was totally out of proportion to Bayshore's guaranty to CCB. However, as we have explained, no penalty was involved. Also, under the law applicable to consideration for contracts the fact that Bayshore was not required to make good on its guaranty is not in itself determinative. There is no dispute that Jason was in default for approximately four months under its obligation to CCB, thus, as CCB advised Bayshore, exposing Bayshore to liability on the guaranty. As far as our review of this appeal at this stage of the litigation is concerned, that default could be considered to have brought into effect the contractual provision that Bayshore was released from liability for the commissions. The fact that Bayshore did not actually pay CCB is irrelevant to whether Bayshore's guaranty of the CCB loan was valid consideration in Bayshore's contract with Jason. Surely the exposure of Bayshore to that liability was a contingent liability of Bayshore reflecting upon its financial condition, thus being a detriment to Bayshore. But even assuming arguendo no detriment therefrom to Bayshore, Bayshore's guaranty promise appears to have met the test for sufficiency of consideration.
[I]t is not essential in order that a promise shall be sufficient consideration that its performance will certainly prove detrimental to the promisor or beneficial to the promisee. A conditional promise is sufficient consideration. The performance of such a promise does not necessarily involve either detriment or benefit, since the condition upon which any action of the promisor is to take place may not happen. But the possibility that the condition may happen involves a chance of detriment which is sufficient to make the promise valid consideration.
1 S. Williston, supra, at 394-95. See also 1 A. Corbin, supra, at § 148.
A conditional promise may be sufficient consideration, and "when a man acts in consideration of a conditional promise, if he gets the promise he gets all that he is entitled to by his act, and if, as events turn out, the condition is not satisfied, and the promise calls for no performance, there is no failure of consideration."
1 S. Williston, supra, at 444. See also A. Corbin, supra, at § 148.
Jason's promise contained in paragraph 6 was a conditional promise, conditioned upon a default by Jason to CCB. Bayshore's guaranty promise was actually not a conditional promise except to the extent its ultimate performance was conditional upon Jason's default to CCB and upon CCB thereafter calling upon Bayshore to pay, which CCB apparently did not do; it was a promised guaranty of an existing obligation of Jason to CCB. But even to the extent that, as seems to be the effect of Jason's argument indicating that Bayshore had no real obligation to CCB unless and until Bayshore was called upon to pay CCB, Bayshore's promise could be construed in that sense as a conditional promise, it was nonetheless valid consideration.
The application of these principles to this case may perhaps be more clearly illustrated in the context of a contract for insurance where a premium is paid and is not returnable by reason of no insured loss having actually occurred. As Williston says in that regard,
A bilateral contract of insurance or guaranty where no loss has occurred, presents the same point. The contract would be binding and the party insured or guaranteed would be liable in such a case to pay the agreed consideration or premium, however the circumstances against which he was insured or guaranteed might turn out.
1 S. Williston, supra, at 444 n. 13.
Accordingly, as we have said, we do not conclude that the case law, which has been argued to provide tests for the validity of paragraph 6 as to whether it involved a liquidated damages clause or a penalty, is *658 apposite. The issue here as to the release of Bayshore's obligation to pay commissions to Jason did not involve whether damages were owed by Jason to Bayshore by reason of a breach by Jason of its contract with Bayshore. Again, there was no contractual promise of Jason to Bayshore for Jason to fulfill Jason's obligations to CCB. The contract between Jason and Bayshore simply contractually established the consequence of a breach of Jason's obligation to CCB. The promise of that consequence was a part of the consideration Jason bargained for when Bayshore agreed to provide the guaranty.
In the present posture of this case at this summary judgment stage, we believe that if we accepted appellee's argument, we would be in effect improperly rewriting paragraph 6 of the contract to add thereto a proviso that upon the default of Jason under its obligation to CCB, Bayshore shall be automatically released from any liability for the commissions to the extent that Bayshore pays sums to CCB by reason of its guaranty. See, e.g., Azalea Park Utilities, Inc. v. Knox-Florida Development Corp., 127 So.2d 121 (Fla.2d DCA 1961). THIRD, the Apparent True, Unargued Issue Generated by the Arguments in This Case As To What Jason Promised to Bayshore and What Bayshore Promised to Jason: What Is the Proper Legal Construction of Clauses In the Contract Which Are Described Below, Including But Not Limited to Paragraph 6, Which Set Forth the Consideration Provided by Jason to Bayshore and Which May Be Argued to Be Either Conflicting Or Consistent As to Whether Under the Facts of This Case Bayshore Was Released From Its Commissions Obligation to Jason.
There has been argument in a liquidated damages-penalty context about a further provision of the Bayshore-Jason contract. That provision, paragraph 4, provides,
As additional consideration for the execution by Bayshore of the CCB Guaranty, Indemnitors [Jason] . .. hereby agree that the ... brokerage commission without interest now owing from Bayshore to the Doran Jason Company in connection with the sale of certain real property ... shall be deferred and shall be due and payable only if and when the CCB Guaranty is terminated and Bayshore is released therefrom without cost or expense to Bayshore.
We conclude that the true issue brought into focus by the arguments of the parties as to the promises of Bayshore and Jason, one to the other, seems to involve, in the final analysis, the proper construction of paragraphs 4 and 6 together. More specifically, it appears that that issue involves the law of contract construction relative to whether or not there may be consistent interpretations given to the provisions of those two paragraphs which set forth Jason's consideration, i.e., Jason's promises, provided for Bayshore's guaranty promise and, if not, which should control. Those paragraphs can be argued to be either inconsistent or to be consistent in more than one way.
Paragraph 4, by itself, seems to reflect the parties' intention that the obligation of Bayshore to pay commissions to Jason was deferred only so long as Bayshore was obligated on its guaranty to CCB and was revived when that obligation of Bayshore was terminated, as it was here by Jason's renegotiation of its loan from CCB. On the other hand, paragraph 6, as quoted further above, seems to reflect that Jason shall release Bayshore from its guaranty obligation if Jason defaults on its loan from CCB, as Jason did.
We might outline, for purposes of illustration, various arguments as to how, simply from those paragraphs on their face, they might be treated as being reconcilable so as to reflect an intention of the parties which would be consistent with either appellant's or appellee's position as to whether or not Bayshore's commission obligation was released under the facts of this case. However, we do not believe that would be proper for us to do in the apparent absence of argument on this issue having been made in the trial court at the summary judgment hearing and the issue apparently *659 not having been appropriate for adjudication there. Also, there was no argument specifically in that regard on appeal. Nor in the present posture of the case do we think it is our proper role to advise whether or not summary judgment as to that issue is or could be appropriate.
Reversed and remanded for proceedings consistent herewith.
DANAHY, J., concurs.
RYDER, C.J., concurs in result only.
NOTES
[1] Also, Jason filed two separate motions for summary judgment. The second, which has been argued on appeal, asserted that paragraph 6 was a liquidated damages clause which constituted an unlawful penalty. But the first, which was not referred to in the briefs or in oral argument, seems to have presented what we have referred to above as the true issue and could be interpreted to assert that Bayshore's consideration for Jason's promise in paragraph 6 was insufficient. There is in the record on appeal no transcript of the argument in the trial court preceding entry of the summary judgment for Jason.
[2] Bayshore's argument on appeal does not address the specific grounds upon which we rely in deciding this case. But the thrust of Bayshore's argument is that the clause in question was enforceable, with which we do not disagree at this stage of the litigation. We feel justice requires that we treat the dispositive issue for this stage as being before us.
[3] The so-called liquidated damages amount, i.e., the approximately $44,000 amount of the commissions, was actually less than Bayshore's potential "damages," i.e., Bayshore's exposure to liability to CCB if Bayshore had been required to make good on its guaranty which amounted to approximately $200,000. Cases declaring liquidated damages clauses to be unlawful penalties typically involve a liquidated damages amount which is disproportionately larger than the amount of potential actual damages. Whether Jason's indemnity agreement with Bayshore (under which Jason was to indemnify Bayshore for that $200,000 if Bayshore was called upon to pay it to CCB) caused the $44,000 to be larger than Bayshore's actual exposure to liability is also not addressed in this opinion.
[4] Jason's answering brief did not address this aspect, apparently because Bayshore's brief had not. Jason's brief, however, does, with apparent candor to this court, refer to the above quoted portion of paragraph 6 as being the "so-called liquidated damages provision" and also cites South Florida Regional Planning Council, supra.