494 So.2d 525 (1986)
Kenneth L. CRISS, Appellant,
v.
DAVIS, PRESSER & LaFAYE, P.A., Appellee.
No. BI-141.
District Court of Appeal of Florida, First District.
September 23, 1986.
Michael T. Callahan, Tallahassee, for appellant.
Joel L. Goldman of Goldman, Presser & Nussbaum, Jacksonville, for appellee.
SMITH, Judge.
Kenneth L. Criss appeals the trial court's final judgment finding him liable to his past employer for damages arising from his breach of a covenant not to compete. Criss asserts that the noncompete clause is a penalty, oppressive, unenforceable, and an improper measure of damages. Criss also maintains that the contract was founded on inadequate consideration. We disagree and affirm.
Since October 1977, Criss was employed by Davis, Presser & LaFaye, P.A. (DP & L), as an accountant specializing in taxation. DP & L is a highly-regarded professional association that provides accounting and tax services. Criss came to the firm with similarly prestigious qualifications, including experience with the Internal Revenue Service, a high competency in taxation, *526 and an outgoing personality conducive to acquiring clients for the firm.
During his six years with DP & L, Criss was successful, receiving additional income and increased responsibility. The testimony at trial demonstrates that DP & L approved of and encouraged Criss to promote business for the benefit of the firm. Accordingly, on July 1, 1981, Criss was made a principal in the firm, a level below equity owner. At this time, Criss signed a new employment contract, much like his prior agreements with DP & L. Included in this agreement, at paragraph four, was a covenant not to compete. It provided that Criss was not to directly or indirectly provide accounting services to any client of DP & L within one year of the termination of his employment. Additionally, the covenant provided that for each client Criss continued to serve in violation of the noncompete provision, he would agree to pay DP & L an amount equal to one and one-half the amount of DP & L's billings to the client during the year preceding his termination of employment with DP & L. The payments were to occur in twelve monthly installments, beginning one month after the earlier of either the date when such client terminated the services of DP & L or when Criss first began providing services to the client. It is undisputed that after Criss had begun his own practice, a number of former DP & L clients obtained Criss' services. The billing records reflect that under the covenant, if enforceable, DP & L is entitled to recover $25,376.00 from Criss.
The trial court rejected Criss' argument that the required payment is oppressive, constituting a penalty rather than liquidated damages. Criss relied heavily on Cherry, Bekaert & Holland v. La Salle, 413 So.2d 436 (Fla.3d DCA 1982), which upheld the trial court's finding that a similar agreement was unenforceable. The agreement in Cherry prohibited an employee from soliciting or performing accounting services to any of his employer's former clients for three years after his employment ended. If the employee failed to abide by the covenant, he would be required to pay an amount equal to 200% of the employer's fees charged to those clients during the twelve months before the termination of his employment.
The trial court distinguished Cherry on several grounds. First, the employer in Cherry had retained discretion to permit or withhold permission from the employee to solicit or perform accounting services for the employer's clients. Second, in Cherry, the employee was subjected to the clause even if a client no longer was served by the employer at the time the employee performed or solicited services. Third, in Cherry, the immediate payment of 200% of the client's billings during the three years following the employee's termination was oppressive, unlike the 150% payment here, which is payable in installments over twelve months, and is limited to clients taken within one year after the employee's termination. The trial court also noted with particular emphasis that the employer in Cherry had closed its Miami office (presumably where it was located at the time of the agreement), and had moved to Broward County.
We agree with the trial court's findings. The agreement to pay one and one-half of DP & L's billings over a twelve month period is not oppressive. The limitation of the restriction to a one year period, its application only to clients who had in fact been clients of the firm within one year prior to the year in which Criss provided services to them, and the twelve month period within which Criss was allowed to pay DP & L makes the agreement tolerable.
Additionally, we agree with appellee that the payment Criss is required to make was properly found not to be a penalty. It is based on an agreement reached by equally well-informed parties through arms-length negotiations. We find nothing prohibiting the parties from agreeing on the amount to be paid as damages, as here, when the amount established is reasonable, not a penalty, and when the damages are by their nature uncertain. Secrist v. National Service Industries, Inc., 395 So.2d 1280 *527 (Fla.2d DCA 1981). Evidence before the trial court established a "going rate" for the sale of established accounting practices ranging from one-half to two times gross annual billings. This evidence alone affords at least minimal support for the trial court's ruling (as he expressly noted in the final judgment) that the agreed figure here, one and one-half times gross billings per client, was not unreasonable. While we agree with appellant that individual clients of a professional firm cannot be bought and sold, since they retain the freedom to consult whom they choose, nevertheless, we find the comparison to a "sale" a useful analogy in weighing the reasonableness of the monetary consequences agreed upon by the parties. We caution that we are not setting forth a rule for the measurement of damages for breach of professional agreements of this sort, but holding only that the trial court's finding of validity in this case is supported by the evidence, and is not shown to be erroneous as a matter of law.
Finally, we find that the covenant was founded on adequate consideration. In Tasty Box Lunch Co. v. Kennedy, 121 So.2d 52 (Fla.3d DCA 1960), the court upheld a noncompete covenant signed by an employee, despite his having worked for the employer for the three preceding months. The court stated that:
Inasmuch as the employment was a continuing contract terminable at the will of the employer or the employee, the continued employment and agreement to pay commissions was consideration for the employee's agreement not to compete.
Id. at 54. And, in Wright & Seaton, Inc. v. Prescott, 420 So.2d 623 (Fla. 4th DCA 1982), the court similarly upheld a covenant not to compete in an employment contract that was terminable at will by the employee. The employee had signed the agreement after having been employed for almost one year. The court found it determinative that the employer had employed the employee for eleven months and sixteen days in reliance upon his promise not to compete. The contract between DP & L and Criss was also terminable at will. Criss also received a continuation of his employment for two years, in addition to a salary increase. Accordingly, we hold that there was adequate consideration for the employment contract.
AFFIRMED.
BOOTH, C.J., and PEARSON, TILLMAN (Retired), Associate Judge, concur.