HERSEY, Chief Judge.
In an order which is labelled “Partial Final Judgment,” Brandy Marine Of The Keys, Inc. (Brandy) was awarded $80,000 as an entitlement for termination of services under a contract. Because the count of the amended complaint on which this adjudication was based and several counts which remain pending in the lower court involve the same transaction, this appeal cannot appropriately be treated as one from a final order. See Stein v. Hospital Corp. of America, 481 So.2d 1264 (Fla. 4th DCA 1986). Review of the “Partial Final Judgment” is available, however, pursuant to rule 9.130(a)(3)(C)(iv), Florida Rules of Appellate Procedure.
The issues are whether the termination fee is payable where good cause for termination is shown and whether the fee is actually a penalty.
Brandy and Hawk’s Cay Investors, Ltd. (Hawk’s Cay), entered into a “Marina *682 Management Agreement” dated June 25, 1983, under which Brandy agreed to manage the marina, pool, and other water activities and facilities at appellants’ resort. Hawk’s Cay agreed to pay Brandy a monthly fee for its management services, which fees would increase each year. Hawk’s Cay also agreed to pay Brandy a percentage of the marina’s net profits, also subject to increment each year to a maximum of 40%.
Paragraph two of the agreement provided that the initial term of employment would be from August 1, 1983, to December 31,1988, and that after the initial term, either party could cancel the agreement by giving ninety days prior written notice of cancellation. Paragraph 3(E) of the agreement provided that if Hawk’s Cay exercised its right of cancellation, it would be obligated to pay Brandy “a sum equal to twelve (12) times the monthly fee, paid to BRANDY during the twelve (12) months immediately preceding BRANDY’S receipt of the cancellation notice.... ” Paragraph four of the agreement stated that if either party should be in default in the performance of its obligations, the non-defaulting party would give written notice of such default and, after allowing ten days or a reasonable time for the defaulting party to cure, the non-defaulting party could, inter alia, terminate the agreement.
On August 20,1984, an Addendum to the Marina Management Agreement was executed in which paragraph two of the agreement was amended by adding the following: “This Agreement may be terminated by Resort [Hawk’s Cay] at any time during the initial term by Resort giving Brandy Thirty (30) Days written notice of termination. In the event Resort terminates this Agreement during the initial term, Resort agrees to pay Brandy a termination fee of $80,000.” (Emphasis added.)
On September 11, 1984, Hawk’s Cay sent Brandy a letter terminating Brandy’s management services effective immediately, and stating that the agreements between them were unconscionable, defective and illusory, and that therefore it was Hawk’s Cay’s position that “no valid agreement exists....”
Brandy thereafter brought suit, alleging in count I of the amended complaint that Hawk’s Cay had failed to give it 30 days notice of termination and had failed to pay it $80,000 pursuant to the addendum agreement. Hawk’s Cay filed an answer, affirmative defenses and counterclaim, alleging that Brandy had failed to perform its services as promised, and that the written agreements between the parties were unconscionable and fraudulently induced.
Brandy moved for a separate, nonjury trial on count I of its amended complaint, and the court granted the motion. The parties entered into a pretrial stipulation, agreeing that the nonjury trial would be “for the purpose of determining the meaning, interpretation and applicability of the Addendum Agreement, in order to potentially resolve the issue raised in Count I of plaintiff’s Amended Complaint.” The parties also agreed that “issues relating to performance and all other issues not resolved in this phase of the trial will be reserved for the jury phase of this trial, if necessary. Specifically, whether there were grounds to terminate ^plaintiff for cause shall not be tried in this part of the trial.” (Emphasis added.)
The nonjury trial was held on December 2,1986, after which the trial court rendered the order in favor of Brandy for $80,000 plus interest.
Appellants filed a motion for clarification, asking the court to state whether it had adjudicated the issue of Hawk’s Cay’s ability to terminate Brandy for cause without paying the termination fee, and what effect the court’s ruling had on the remaining counts of the complaint and on appellants’ defenses and counterclaims. The court thereafter rendered an order stating that it had determined only that “the termination fee must be paid regardless of the purported reason for termination.”
The addendum clause states that Hawk’s Cay can terminate the contract during the initial term by giving thirty days notice, and if it does so, it must pay Brandy $80,000. Under this clause, there *683 fore, Hawk’s Cay could terminate the contract for any reason or for no reason, but was obligated to pay the $80,000 fee, regardless of the reason or lack of reason for termination. There is nothing in the language of the addendum to support appellants’ argument that the fee need not be paid if termination was “for cause.” We therefore conclude that the trial court correctly (although perhaps prematurely, as we will discuss subsequently) determined this issue.
Appellants next contend that the addendum clause providing for the $80,000 termination fee should be regarded as a liquidated damages provision, and that such provision should be held invalid as constituting an unlawful penalty. A liquidated damages provision is proper only when the damages at the time of contracting are by their nature uncertain, and when the damages to be paid are not excessive or unreasonable. Secrist v. National Service Industries, Inc., 395 So.2d 1280 (Fla. 2d DCA 1981).
Appellees counter this argument by contending that the addendum clause providing for the termination fee should be regarded as valid consideration for Hawk’s Cay’s right to terminate the contract during the first term rather than as a liquidated damages provision, and relies on Bayshore Royal Company v. Doran Jason Company of Tampa, Inc., 480 So.2d 651 (Fla. 2d DCA 1985). In Bayskore, the plaintiff sued the defendant for approximately $44,000 in real estate brokerage commissions. The defendant did not dispute that the obligation for the commissions arose, but asserted that it was released from the obligation by a subsequent contract. That contract provided that the defendant would be released from liability for the commissions if the plaintiff went into default under a loan agreement of plaintiff with a third party, which was partially guaranteed by the defendant. It was undisputed that the plaintiff defaulted on the loan.
The second district found that the contractual provision under which the plaintiff conditionally promised to release the defendant from liability for the commissions did not constitute a liquidated damages clause which could be found to be an unlawful penalty, but constituted consideration provided by the plaintiff for the defendant’s reciprocal promise to the plaintiff to guarantee the loan agreement. The court reasoned that liquidated damages clauses can exist only when they provide for “damages” (something to be given by one party who breaches the contract to the other party to compensate the other party for his loss which is a consequence of that breach), and that the contract clause in question did not provide for “damages” but merely represented “consideration” (the thing or promise one party to a contract gives to the other party in return for the thing or promise the other party gives) for the contract.
The Bayskore court held that the plaintiffs default on the loan was not a breach of a contractual promise by the plaintiff to the defendant, and that the court had been cited to no authority which states that “liquidated damages, or damages, consist of an amount which a party to a contract ... is obligated to pay to the other party upon the occurrence of an event when the occurrence of the event is not a breach of that contract by the party so obligated.” Id. at 655.
In the present case, it is appellees’ position that the $80,000 fee was simply an amount which Hawk’s Cay was obligated to pay to Brandy upon the occurrence of an event (termination of the contract within the first term) which was not a breach of the contract. Therefore, the $80,000 did not constitute liquidated damages. Instead, the $80,000 was simply consideration promised by Hawk’s Cay in exchange for the right to terminate the contract during the first term.
This court, however, in Dade National Development Corporation v. Southeast Investments of Palm Beach County, Inc., 471 So.2d 113 (Fla. 4th DCA 1985), rev. denied, 482 So.2d 349 (Fla.1986), applied a “liquidated damages” analysis to a contractual provision similar to the disputed addendum clause in the present case. In *684 Dade National, a seller and a buyer entered into two contracts for the sale of realty. The contracts provided that the seller reserved the right to cancel the contracts at any time, but was required to pay the buyer certain fees if he did so: $100,-000 if cancellation occurred during the first six months after the date of the contract and $200,000 if cancellation occurred after the first six months. The seller never attempted to exercise its right to cancel pursuant to those provisions, but did thereafter file suit, claiming that the buyer had defaulted by failing to close. The buyer counterclaimed, seeking payment of the sums provided for in the cancellation clauses.
This court held that the buyer did not default and that the seller prematurely terminated the contracts, thereby invoking the terms of the cancellation clauses. The court stated that the question to be resolved was whether the forfeiture provision constituted a penalty or liquidated damages, and concluded that it was a valid liquidated damages provision.
Appellees also contend that even if the addendum clause in the present case is considered to be a provision for liquidated damages, it is a valid provision and not a penalty. In Dade National, this court found a valid liquidated damages provision where the nature of the buyer’s potential damages precluded the parties from readily ascertaining the amount of those damages at the time the contracts were executed, and where the seller’s obligation under the cancellation clause was not so disproportionate to the buyer’s potential damages that it could only have been included to induce full performance rather than to liquidate damages.
Here, at the time the parties entered into the addendum agreement, the original marina management agreement provided that Brandy would be paid a monthly fee increasing from $1,500 in 1983 to $4,000 in 1987 and thereafter, and a percentage of profits increasing from 20% in 1985 to 40% in 1986 and thereafter. At the time the parties executed the addendum agreement, therefore, Brandy’s future monthly fees were readily ascertainable, but its future share of profits was not.
Brandy’s president testified that the $80,-000 fee was derived from calculations by Mr. Barrington, one of Hawk’s Cay’s stockholders, based on ten percent of Hawk’s Cay’s total potential liability to Brandy. Mr. Barrington testified that he didn’t remember how the $80,000 figure was arrived at, but that he had determined that if Hawk’s Cay failed to renew the contract after the first term, Hawk’s Cay’s total potential liability to Brandy would be about $800,000. Brandy’s potential damages caused by an early termination of the contract were far greater than $80,000, so it is unlikely that the termination fee clause was included only to induce full performance by Hawk’s Cay rather than to liquidate damages.
We therefore conclude, in agreement with appellees, that even if the addendum clause here in dispute is regarded as a liquidated damages provision, it should not be considered to be an unlawful penalty. Even so, however, we find it necessary to remand.
The nonjury trial was held only to determine the meaning of the addendum agreement. All other issues were reserved for a jury trial. The reserved issues, set forth in appellants’ answer and counterclaim, include, inter alia, lack of consideration, unconscionability of the agreement, mistake, and fraud in the inducement. The counterclaim includes a count for rescission, a count for breach of contract, counts for negligence, a count for breach of a fiduciary relationship, and a count for fraud. These issues go to the validity and enforceability of the entire agreement, upon which liability for the $80,000 depends. The Partial Final Judgment, however, makes no mention of appellants’ defenses or counterclaim, but simply awards Brandy $80,000 plus interest and retains jurisdiction to consider Brandy’s claims for certain unpaid reimbursable expenses and assessment of costs and attorney’s fees. This implies that the remaining issues were considered and disposed of sub silento. These issues, however, should have been *685 either specifically ruled on or reserved; and if they were indeed reserved, then the partial final judgment was premature.
In their motion for clarification, appellants asked the court to state the effect of its ruling on the remaining counts of the complaint, and the remaining defenses and counterclaim. In its order on clarification, however, the court made no reference to these remaining issues. Therefore, although we agree with appellees that the addendum clause providing for the termination fee appears to be a valid and enforceable contractual provision, we conclude that the case must be remanded for clarification as to exactly what issues were tried, why, and how they were disposed of.
REVERSED AND REMANDED.
DOWNEY and GUNTHER, JJ., concur.